UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

Nichole Lutz

On behalf of herself and
all others similarly situated

    Plaintiffs

v.

Case No. _____

Froedtert Health Inc.

    Defendant.

## COMPLAINT

Plaintiff, by her attorneys, for her Complaint against Defendant states as follows:

1. This is a collective action under the Fair Labor Standards Act, and an individual and class action under Wisconsin law by Plaintiff, on behalf of herself and other current and former hourly employees of Froedtert Health Inc. ("Froedtert"), to seek redress for Froedtert's failure to pay to them straight time and overtime pay required by the FLSA and Wisconsin law.

### JURISDICTION AND VENUE

2. This court has subject matter jurisdiction under 29 USC §216(b) and 28 U.S.C. §1331 because Plaintiff alleges violations of the FLSA, 29 U.S.C. §201 et seq.

3. This Court has supplemental jurisdiction over the Plaintiff's claims brought under Wisconsin law pursuant to 28 U.S.C. §1367 because they are based upon the same nucleus of operative facts, and therefore form the same case or controversy as her FLSA claims.

4. This Court has personal jurisdiction over Froedtert because virtually all of its business activities occur in the Eastern District of Wisconsin.

5. Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) because all of the events giving rise to the claims described herein, in particular those events that pertain to the Named Plaintiff, occurred in this district.

## THE PARTIES

6. Named Plaintiff Nichole Lutz is an adult resident of the State of Wisconsin who is currently employed by Defendant Froedtert in its Sterile Processing Department. A copy of the FLSA consent signed by Lutz is being filed at the same time as this Complaint. Lutz did not opt out of the settlement between Toni Fore and Froedtert, but neither did she ever cash any of the settlement checks that she received. Lutz therefore has not released any of her FLSA claims against Froedtert, and has only released her Wisconsin law claims through the date of preliminary approval for the settlement in Fore v. Froedtert, or through July 26, 2021.

7. Defendant Froedtert is a Wisconsin corporation operating numerous hospitals, clinics, and other healthcare related facilities and businesses in Southeastern Wisconsin.

8. Froedtert by virtue of its operations within Wisconsin is an employer within the meaning of Wis. Stat. §109.03(1). Froedtert is also an employer engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. §203, by, for example, purchasing equipment, materials, and other supplies that were directly or indirectly produced outside Wisconsin, and by providing services to patients from other states. At all relevant times, Froedtert has had annual gross volume of business at or above $500,000.

## FACTS

9. Beginning in October of 2020, Plaintiff was normally scheduled to work between 3:00 p.m. to 11:30 p.m., Monday through Friday.

10. At all times between June of 2021 and the present, Plaintiff always received extra pay equal to $11 per unit when she worked on Saturdays or Sundays or on Holidays; and sometimes received extra pay equal to $11 per unit when she worked more than 8 hours per day on weekdays. If Plaintiff did receive units of extra pay, she received anywhere between 1 unit to 2 units of pay for each hour for which management awarded her units of extra pay.

11. During the majority of days when Plaintiff worked more than 8 hours per day on weekdays, she did not receive any units of extra pay, because on those days Froedtert management did not offer units of extra pay to her.

12. Plaintiff sometimes received units of extra pay for each hour that she worked on a weekday, rather than only for her hours worked on weekdays in excess of 8 per day. For example, on Friday April 21, 2023, which was not a holiday, Plaintiff received 16.1 units of extra pay for working a shift of 8.55 hours; so that she could not have received 16.1 units of extra pay, at $11 per unit, for 0.55 hours that she worked over 8 hours on the day.

13. Froedtert therefore did not have an understanding with Lutz, nor an employment practice to pay her extra units of pay whenever she worked more than 8 hours on weekdays. Rather, units of extra pay were only offered on weekdays to Plaintiff to create an incentive for her to fill in, and to work hours that management needed to have worked.

14. Froedtert treated the weekday hours for which Plaintiff received units of extra pay as hours worked, for the purpose of determining her eligibility for overtime pay for working over 40 hours per week. However, Froedtert did not include units of extra pay that Plaintiff received for working on weekdays in computing her regular rate for each of her workweeks.

15. For each shift that Plaintiff worked that lasted longer than 6.25 hours, Froedtert automatically deducted 30 minutes from her worktime for a meal period, unless Plaintiff reported

that she worked through her meal period by cancelling her meal period. Froedtert has never told Plaintiff that she should cancel her meal period if she either returned early from her meal period, or performed work during only a portion of her meal period.

16. Under Froedtert Policy, Plaintiff is entitled to take a meal period that is exactly 30 minutes in duration when her work shift lasted 6.25 hours or longer.

17. Froedtert did not require Plaintiff to punch out and punch back in for her meal periods; so that it failed to maintain any records showing the beginning and ending times of Plaintiff's meal periods, even though work in Plaintiff's Department did not cease on a regularly scheduled basis to permit each employee to take their meal periods at the same time.

18. For a period of approximately a year and a half, all of which were after July of 2021, Plaintiff carried a communication device, and was a part of Froedtert's Vocera Wireless Communication System.

19. Plaintiff would notify the lead person or supervisor in her department when she was beginning her meal periods.

20. Even though they knew that Plaintiff was taking her meal periods, supervisors in Plaintiffs department communicated with Plaintiff via the Vocera System several times per week while Plaintiff was on her meal periods to ask her questions about the work that Plaintiff was performing, so that her Department could continue to function smoothly without having to wait for Plaintiff to return from her meal period.

21. These interruptions to Plaintiff's meal periods, which often took 5 minutes or longer to resolve, could occur at anytime during Plaintiff's meal periods, and often occurred in the middle of Plaintiff's meal periods so that during a meal period that was supposed to last 30 minutes

Plaintiff sometimes did not receive even 15 consecutive minutes during which she was completely relieved of duty.

22. Froedtert has never communicated to Plaintiff that when her meal period was interrupted by communications on the Vocera System, she should extend her meal period so that she received 30 or even 20 consecutive minutes, during which she was completely relieved of duty.

23. The Vocera Communication System only worked if Plaintiff remained on Froedtert property during her meal periods.

24. Froedtert required Plaintiff to answer calls on the Vocera Communication System during her meal periods given that her supervisors frequently contacted her on the Vocera system during times when they knew she was on her meal periods, it has never communicated to Plaintiff that she is not required to answer calls on the Vocera Communication System during her meal periods, and it has never communicated to Plaintiff that she would not be disciplined for failing to answer calls on the Vocera Communication System during her meal periods.

25. Froedtert's own policies are ambiguous as to whether any employees are permitted to leave during their meal periods. For example, one of its policies stated that staff must receive permission from a supervisor before leaving the assigned workstation during the shift, without explaining that leaving for meal periods constituted an exception from this policy.

26. Because Plaintiff understood that she was required to answer calls on the Vocera system during her meal periods, and because the Vocera Communication system only worked when Plaintiff remained on Froedtert property, Plaintiff never left Froedtert property on her meal periods while she carried a device for the Vocera Communication System.

27      Both when Plaintiff did, and when she did not carry a device for the Vocera Communication System, she would one or more times per week return from her meal periods, and begin to perform work, before she took a full 30 minutes for her meal periods.

28.     Plaintiff would sometimes return early from her meal periods to begin work before she took 20 consecutive minutes for her meal periods.

29.     The supervisor or lead person in Plaintiff's Department would monitor the end time for Plaintiff's meal period, so that Plaintiff would be spoken to if she extended her meal period beyond 30 minutes.

30.     By monitoring when Plaintiff returned from her meal periods, Froedtert knew, through the supervisor or lead person in Plaintiff's Department, that Plaintiff sometimes returned early from her meal periods.

31.     Froedtert has never promulgated or enforced any policies that required Plaintiff to take the full 30 minutes for her meal periods.

32.     Plaintiff frequently worked more than 40 hours per week, so that she would be entitled to additional overtime pay if either her meal periods during which she did not receive 20 or even 15 consecutive minutes free from work, or if the time period during which she actually performed work during her meal periods, were counted as hours worked.

33.     Between July of 2021 and May of 2022, Plaintiff was required to undergo a COVID screen via the Screen2work app at the beginning of each workday. She would undergo the screen by confirming that her body temperature was normal, and by answering a series of questions related to whether she may be a carrier of the virus that caused COVID-19. Plaintiff must complete the COVID screen within two hours before the beginning time for her shift.

34. Between July 26, 2021 and May 4, 2022, If Plaintiff was able to complete the COVID screen on the Screen2work App, she could gain access to her work place by showing to the screener both her badge, and the screen on the Screen2work app stating that she was cleared.

35. If screen2work app malfunctioned, so that Plaintiff could not complete her self-screen on the app, she was required to undergo a COVID screen at the facility with a screener before entering her workplace. During the time period of July 26, 2021 to May 4, 2022, Plaintiff sometimes underwent her COVID screening at her workplace rather than on the Screen2work App.

36. If Plaintiff underwent a COVID screen at her workplace, a screener would take her temperature. If her temperature was normal, the screener would ask her verbally 7-8 questions, all of which Plaintiff would be required to answer verbally. Plaintiff was permitted to walk past the screener and toward her place of work only after she answered the screener's questions.

37. Once Plaintiff walked past the screener, she would then spend two minutes to walk to the badge reader to punch in. Plaintiff sometimes had to wait for other employees to punch in first before she could punch in. The entire COVID screen process, whether it consisted of Plaintiff completing the Covid screening at home, showing to the screener her badge and that she was cleared, walking to the badge reader, and punching in; or Plaintiff completing the COVID screening at her place of work, walking to the badge reader, and punching in, would take approximately five minutes.

38. Plaintiff's job for Froedtert consisted of checking and assembling medical instruments that had been cleaned. Plaintiff represented the last step before the instruments, which are often plastic, are sent back to the appropriate areas in Froedtert's facility to provide medical services to patients, including but not limited to surgeries. If Plaintiff was infected with COVID-19, she could spread the coronavirus to the instruments by breathing on them, given that the masks

that she was wearing were not 100 percent effective in blocking respiratory droplets. Since Plaintiff's principal activity consisted of preparing medical instruments that safeguarded the health and safety of patients, undergoing the COVID screen was integral and indispensable to Plaintiff's ability to perform her principal activity without jeopardizing the health and safety of patients.

39. Through May 4, 2022, Froedtert rounded all of Plaintiff's punch-in times to the nearest quarter hour. There were days during the time period between July 26, 2021 to May 4, 2022 that Plaintiff punched in at 53 minutes past the hour, so that crediting her with a start time even one minute earlier would entitled her to compensation for an additional 15 minutes worked. There were weeks when crediting Plaintiff with an additional quarter hour worked per day would result in her receiving credit for additional overtime hours worked during the week.

## COLLECTIVE ACTION ALLEGATIONS

40. Plaintiff brings her First Claim for Relief, pursuant to the Fair Labor Standards Act, on her own behalf and on behalf of all other similarly situated Froedtert employees who (a) received extra pay for hours that they worked during their scheduled days of work; (b) answered a work related call on the Vocera Communication System, or another similarly communication system during their meal periods; or (c) completed COVID screenings on days when they physically worked at Froedtert Buildings, and their job responsibilities required them to either have contact with patients, or have contact with instruments or tools that may then have contact with patients.

41. Plaintiff is similarly situated to all other members of each of these proposed collectives because she was subject to uniform Froedtert policies that excluded units of extra pay that she received on her scheduled days of work when computing her regular rate, that deducted 30 minutes from employees' hours worked on workdays when communications via the Vocera

Communication System interrupted the employees' meal periods, and that rounded to the nearest quarter hour the time when employees punched in on days when employees underwent COVID screenings before punching in.

## CLASS ALLEGATIONS

42. Plaintiff seeks to represent the following classes pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> All hourly non-exempt employees employed by Froedtert who, for the time period after of July 26, 2021 to the present either (a) received extra pay for working on a scheduled day of work; (b) received a work related call during their meal periods on a device that enabled them to communicate via the Vocera Communication System or another similar system; or (c) underwent COVID Screenings on days when they physically worked at Froedtert buildings, and had contact with either patients or with instruments or materials that may have contact with patients.

43. The persons in the class identified above are so numerous that joinder of all members is impracticable. Upon information and belief, there are at least many hundreds of members in proposed subclasses (a) and (b) because Froedtert frequently offered extra pay to its employees to make up for staff shortages; and because many Froedtert employees such as nurses responded to calls on the Vocera system during their meal periods. Upon information and belief, the majority of all Froedtert hourly non-exempt employees fall into proposed subclass (c), so that it includes many thousands of members.

44. Commonality is satisfied when the Court can decide Froedtert's liability by answering uniform questions of law including whether extra pay that employees sometimes received when they worked over 8 hours on their scheduled days of work constituted overtime premiums, whether employees received 30 minutes free from work on days when their meal periods were interrupted by communications on the Vocera system, whether employees had on-duty meal periods because their responsibility to respond to communications on the Vocera system

during their meal periods meant that they were not free to leave Froedtert's premises during their meal periods; and whether employees' time spent undergoing the COVID screenings, showing the "cleared" screen to the screener, and walking to the time clock and punching in must count as hours worked.

45. Plaintiffs' claims are typical of the claims of members of each of the subclasses that she seeks to represent because (a) the units of extra pay that she received on her regularly scheduled days of work were not included in computing her regular rate of pay; (b) she was not paid for her meal periods on days when her meal periods were interrupted by communications on the Vocera communication system; and/or on days when she was not free to leave Froedtert facilities during her meal periods because she had to answer communications on the Vocera communication system; and (c) she was paid starting at the quarter hour nearest to when she punched in, so that she was not paid for her time spent undergoing the COVID screenings, showing the "clear" screen to the screener, walking to the time clock, and punching in.

46. Plaintiff will fairly and adequately protect the interests of the Rule 23 class; and has retained counsel experienced in complex wage and hour litigation, including previous wage and hour litigation against Froedtert.

47. As to proposed subclass (a), common questions of liability will predominate when the Court can determine whether and the extent that each class member was harmed by applying uniform formulas to Froedtert's own time and payroll records.

48. As to proposed subclasses (b) with respect to the claim that employees were not free to leave Froedtert facilities during their meal periods, the Court can uniformly determine whether each group of Froedtert employees was responsible for responding to communications on the Vocera system during their meal periods, and therefore were not permitted to leave Froedtert

facilities during their meal periods. If the Court finds liability, it can then compute damages by relying on Froedtert's own records, which show each meal break that was deducted from each employee's hours worked.

49. As to proposed subclasses (b) with respect to the claim that employees' meal periods were interrupted by communications on the Vocera system and subclass (c), the Court can fill gaps in Froedtert's recordkeeping by uniformly determining, as a matter of just and fair inference, how often employees would have their meal periods interrupted by communications on the Vocera system so that they did not receive 30 consecutive minutes free from duty, and how much time it would take the employee between when they began their COVID screenings and when they punched in; and then apply uniform formulas to its determinations and Froedtert's own records to compute damages for each class member.

50. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Defendants' common and uniform policies and practices denied the Wisconsin Unpaid Wage Class the wages for work performed to which they are entitled. The damages suffered by the individual Wisconsin Unpaid Wage Class members are too small to generate a contingency fee that would justify a lawyer assuming the risk of recovering nothing if an individual claim is unsuccessful. In addition, class certification is superior because it will permit the Court to resolve predominate legal questions that drive the resolution of this litigation, while obviating the need for unduly duplicative litigation that might result in inconsistent judgments about the legality of Defendant's pay practices.

**COUNT I.    CLAIM FOR OVERTIME PAY UNDER THE FLSA.**

51. Plaintiff re-alleges, and incorporates by reference, the allegations contained in paragraphs 1- 50 of the Complaint.

52. To qualify as an overtime premium under §207(e)(5), units of extra pay that Froedtert paid to Plaintiff for some of her hours worked on weekdays must be paid *because* she worked more than 8 hours per day. Froedtert cannot satisfy this standard when it sometimes paid Plaintiff units of extra pay for the first 8 hours that she worked on a weekday, which was not a holiday, and which was the first day of Plaintiff's Friday to Thursday workweek.

53. Alternatively, pursuant to 29 C.F.R. §778.202, for overtime to be paid because the employee worked more than 8 hours per day, there must be an agreement or established practice to pay employees overtime pay when they worked more than 8 hours per day. Froedtert cannot satisfy this requirement because Plaintiff did not receive any extra pay during the majority of her weekdays during which she worked more than 8 hours per day.

54. Because the extra pay Plaintiff received for her hours worked on weekdays was not an overtime premium, the extra pay must be included in the regular rate used to compute Plaintiff' regular rate, which Froedtert must use to compute the amount of her weekly overtime pay. Plaintiff would have received more overtime pay had Froedtert done so.

55. Plaintiff's meal breaks sometimes were interrupted because she was required to communicate with her supervisors on work related matters on the Vocera system. The interruptions resulted in Plaintiff not receiving 20 consecutive minutes, during which she was completely free from work, during her meal periods.

56. Plaintiff similarly did not receive 20 consecutive minutes during which she was completely relieved of duty on days when she, with the knowledge of her direct supervisor and therefore Froedtert, returned early from her meal period to perform work for Froedtert.

57. Because a period shorter than 20 consecutive minutes is a compensable rest period rather than a non-compensable meal period, Froedtert violated the FLSA by deducting from

Plaintiff's hours worked both the time that she spent performing work during her meal periods, and the periods during which she was completely relieved from duty during her meal periods, which were shorter than 20 consecutive minutes.

58. Alternatively, Froedtert violated the FLSA by deducting from Plaintiff's hours worked the portion of her meal periods during which she either engaged in work related communications with her direct supervisor and therefore Froedtert, or after she returned early from her meal periods; even if the FLSA did permit it to deduct from Plaintiff's hours worked her shortened meal periods.

59. Plaintiff's undergoing, and demonstrating to Froedtert that she passed her COVID screenings was integral and indispensable to providing to patients cleaned medical equipment that did not carry the Coronavirus, and therefore was integral and indispensable to her principal activity of cleaning and assembling medical equipment that safeguarded the health and welfare of patients.

60. Plaintiff's time spent undergoing the COVID screenings, showing to the screener that she passed her COVID Screenings, and her subsequent time spent walking to the badge reader, waiting to punch in, and punching in therefore must count as hours worked.

61. Plaintiff is entitled to additional overtime pay that she should have received, had Froedtert counted her times described in paragraphs 57, 58, and 60 of this Complaint as hours worked.

62. Because Froedtert had no reasonable grounds for believing that its timekeeping and employee compensation policies at issue in this lawsuit complied with the FLSA, Plaintiff is entitled to liquidated damages on all additional overtime pay that she should have, but did not receive under the FLSA.

63. Because Froedtert was fully aware of its obligation to pay its employees full overtime pay for their hours worked over 40 per week, and had previously been sued for its violations of the FLSA, yet failed to investigate whether its policies of treating extra pay paid on weekdays to Plaintiff as overtime premiums, that failed to pay Plaintiff for interrupted and shortened meal periods, that did not count Plaintiff's COVID screening and related time as hours worked complied with the FLSA, members of the proposed collective action are eligible for application of a three years statute of limitations.

64. Plaintiff is additionally entitled to her reasonable attorneys' fees incurred in prosecuting this first cause of action.

## COUNT II. CLAIM FOR UNPAID WAGES UNDER WISCONSIN LAW.

65. Plaintiffs re-allege, and incorporate by reference, the allegations contained in paragraphs 1-64 of the Complaint.

66. Wisconsin law adopts the FLSA's rules for computing employees' overtime pay using the regular rate, so that Froedtert equally violated Wisconsin law by excluding units of extra pay that Plaintiff received for her work on weekdays from the computation of her regular rate.

67. On days when Plaintiff responded to calls on the Vocera system during her meal periods, her employee did not provide her with 30 consecutive minutes during which she was completely relieved from duty, so that she received compensable on-duty meal periods.

68. On days when Plaintiff could have been but did not receive calls on the Vocera system during her meal periods, she was not free to leave the premises of Froedtert's facilities because she was required to respond if she was called on the Vocera system, and because the Vocera system only worked on the premises of Froedtert's facilities. Plaintiff therefore received compensable on-duty meal periods even if she did receive 30 minutes free from work.

69. An employee is not completely relieved from duty for the purpose of eating regular meals if she was required to perform work during her meal period. Because Wisconsin law treats work time as equally compensable whether the employee was required, or was suffered or permitted to perform work, an employee equally is not completely relieved from duty, if her employer suffered or permitted, but did not request for her to perform work during her meal period.

70. On days when Plaintiff returned early from her meal periods, Froedtert through its supervisor suffered or permitted her to work during the remainder of her meal periods, so that Plaintiff was not completely relieved from duty for 30 minutes for the purpose of eating meals. Plaintiff therefore received compensable rest periods rather than non-compensable bona fide meal periods during such days.

71. Plaintiff's time spent undergoing COVID screenings, showing the "clear" screen to the screener, walking to the time clock, waiting at the time clock, and punching in are compensable under Wisconsin law for the same reasons that they are compensable under the FLSA.

72. For all work time described in paragraphs 67-68 and 70-71 of the Complaint, which Froedtert should have but failed to count as hours worked, Plaintiff is entitled to straight time pay at her regular applicable rate of pay, plus additional overtime pay for all additional hours worked over 40 per week once she received proper credit for all of her hours worked.

73. By failing to pay to the Plaintiff all straight time and overtime wages required by Wisconsin law within 31 days of when the work was performed, Defendants violated Wis. Stat. §109.03(1), so that Plaintiff may bring suit under Wis. Stat. 109.03(5) to recover all straight time and overtime wages owed to her, plus 50% of the unpaid wages as liquidated damages allowed by Wis. Stat. §109.11(2), plus her reasonable attorneys' fees and costs incurred in prosecuting this action pursuant to Wis. Stat. §109.03(6).

WHEREFORE, Plaintiff respectfully requests the Court to enter an order that:

a. Finds that Froedtert is liable to her for all overtime pay that she should have received had she received credit for all of her hours worked, and had it computed her overtime pay using the method permitted by the FLSA; plus 100% liquidated damages;

b. Finds that Froedtert is liable to her for straight time pay for hours that it should have but failed to count as hours worked, and for all overtime pay to which she is entitled, plus 50% liquidated damages;

c. Awards similar straight time and overtime relief to members of the proposed collective and class actions, including awarding relief to members of the proposed collective action pursuant to a three year statute of limitations;

d. Awards to her reasonable attorneys' fees and costs incurred in maintaining and prosecuting this action on an individual, collective, and class basis.

Dated this 20th day of July, 2023.

/s/Yingtao Ho
Yingtao Ho
Email: yh@previant.com
Attorney for Plaintiffs
The Previant Law Firm S.C.
310 W. Wisconsin Avenue, Suite 100MW
Milwaukee, WI 53203
Telephone: 414-271-4500
Fax: 414-271-6308

Consent to Opt In and
Participate as a Named Plaintiff in Suit for
Violations of Fair Labor Standards Act

I, Nichole Lutz, hereby consents to participate in the lawsuit against Froedtert Health, Inc., along with any other entities that under the law may be responsible for the underpayment of overtime wages to me, (Hereinafter "Employers") under the Fair Labor Standards Act, 29 U.S.C. §201 *et seq*. This written consent is intended to serve as my consent in writing to join in this lawsuit and become a party plaintiff as required by 29 U.S.C. § 216(b).

During the last two years, Employers failed to pay to me full overtime wages for each of my actual hours worked over 40 per week, so that I am consenting to join in a lawsuit for unpaid minimum wages, overtime wages, attorneys' fees and costs against Employers.

By signing and returning this consent to sue, I understand that I will be represented by The Previant Law Firm, s.c.

Dated: 7/17/2023

Signed: *(signature)*
Nichole Lutz