UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

NICHOLE LUTZ,

          Plaintiff,

v.                                        Case No. 23-CV-974

FROEDTERT HEALTH, INC.,

          Defendant.

## DECISION AND ORDER

On behalf of herself and similarly situated hourly employees of defendant Froedtert Health, Inc., Nichole Lutz brought this action under the Fair Labor Standards Act (FLSA) and Wisconsin's parallel wage and hour law. (ECF No. 1.) She asks the court to conditionally certify this as a collective action under 29 U.S.C. § 216(b) and to approve her proposed notice to potential members of the FLSA collective. (ECF No. 21.)

Froedtert opposes the motion. (ECF No. 24.) However, its opposition is based almost entirely on its contention that Lutz's claims lack merit because its policies did not violate the FLSA.

"The Fair Labor Standards Act gives employees the right to bring their FLSA claims through a 'collective action' on behalf of themselves and other 'similarly situated'

employees." *Alvarez v. City of Chi.*, 605 F.3d 445, 448 (7th Cir. 2010) (quoting 29 U.S.C. § 216(b)). "A collective action is similar to, but distinct from, the typical class action brought pursuant to Fed. R. Civ. P. 23." *Id*. Unlike a class action whereby members are included unless they opt out, a person is a member of a collective action only if she opts in. *Id*.

The FLSA does not specify how collective actions are to proceed. *Williams v. Matteson Sports Bar*, No. 21-cv-04043, 2024 U.S. Dist. LEXIS 49200, at *7 (N.D. Ill. Mar. 20, 2024). Thus, a district court has wide discretion in managing such actions. *Alvarez*, 605 F.3d at 449 (citing *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 171 (1989)); *Miller v. St. Clair Cty.*, No. 23-cv-2597-JPG, 2024 U.S. Dist. LEXIS 86393, at *12-13 (S.D. Ill. May 13, 2024).

Courts within the Seventh Circuit typically employ a two-step process for determining whether an FLSA lawsuit should proceed as a collective action. *Calloway v. AT&T Servs.*, No. 1:18-CV-06975, 2024 U.S. Dist. LEXIS 57008, at *5 (N.D. Ill. Mar. 28, 2024). At the first step, "called conditional certification, employees must make a 'modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Id.* at *5-6 (quoting *Gomez v. PNC Bank, Nat'l Ass'n*, 306 F.R.D. 156, 173 (N.D. Ill. 2014)); *Placide v. Roadrunner Transp. Servs.*, No. 21-CV-1004-JPS, 2022 U.S. Dist. LEXIS 152814, at *6 (E.D. Wis. Aug. 25, 2022) ("The focus of this inquiry is not on whether there has been an actual violation

of law but rather on whether the proposed plaintiffs are similarly situated with respect to their allegations that the law has been violated." (brackets, quotation marks, and ellipses omitted) (quoting *Brabazon v. Aurora Health Care, Inc.*, No. 10-CV-714, 2011 U.S. Dist. LEXIS 37057, at *8 (E.D. Wis. Mar. 28, 2011)).

"District courts employ a lenient interpretation of the term similarly situated." *Placide*, 2022 U.S. Dist. LEXIS 152814, at *5 (internal quotation marks omitted) (quoting *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 848 (N.D. Ill. 2008)). Although the standard is "lenient," and imposes a "low standard of proof," *Calloway*, 2024 U.S. Dist. LEXIS 57008, at *7 (quoting *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 855 (N.D. Ill. 2013)), conditional certification is neither automatic nor a mere formality, *id.* at *6 (quoting *Hannah v. Huntington Nat'l Bank*, 2020 U.S. Dist. LEXIS 89413, 2020 WL 2571898, at *6 (N.D. Ill. May 21, 2020)).

If the plaintiff meets this standard, the court authorizes the plaintiff to send notice to the potential members of the collective action, informing them of the lawsuit and the opportunity to opt-in. *Williams*, 2024 U.S. Dist. LEXIS 49200, at *7 (quoting *Jirak*, 566 F. Supp. 2d at 847). "[T]he purpose of conditional certification is to determine the size and contour of the group of employees who may become collective members and whether these potential members are 'similarly situated.'" *Briggs v. PNC Fin. Servs. Grp.*, No. 15 C 10447, 2016 U.S. Dist. LEXIS 11148, at *4 (N.D. Ill. Jan. 20, 2016) (citing 7B Charles A. Wright et al., *Federal Practice & Procedure* § 1807).

Step two "occurs after the parties have engaged in discovery and the opt-in process is completed[.]" *Williams*, 2024 U.S. Dist. LEXIS 49200, at *7. This involves "a more stringent inquiry" whereby "the court must reevaluate the conditional certification to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis." *Id.* at *8 (quoting *Elder v. Comcast Corp.*, No. 12 C 1157, 2015 U.S. Dist. LEXIS 70231, 2015 WL 3475968, at *5 (N.D. Ill. June 1, 2015)).

The conditional certification stage is not the time for assessing the merits of the underlying claims. *Placide*, 2022 U.S. Dist. LEXIS 152814, at *5-6 (quoting *Steger v. Life Time Fitness, Inc.*, No. 14-CV-6056, 2016 U.S. Dist. LEXIS 156079, 2016 WL 6647922, at *1 (N.D. Ill. Nov. 10, 2016); *Brabazon*, 2011 U.S. Dist. LEXIS 37057, at *8; citing *Fares v. H, B, & H. LLC*, No. 21-CV-753, 2022 U.S. Dist. LEXIS 3930, 2022 WL 72081, at *2 (E.D. Wis. Jan. 7, 2022)); *Briggs*, 2016 U.S. Dist. LEXIS 11148, at *4 (citing *Larsen v. Clearchoice Mobility, Inc.*, No. 11 C 1701, 2011 U.S. Dist. LEXIS 80899, 2011 WL 3047484, at *1 (N.D. Ill. July 25, 2011); *Nehmelman v. Penn Nat'l Gaming, Inc.*, 822 F. Supp. 2d 745, 751 (N.D. Ill. 2011)); *cf. Eddlemon v. Bradley Univ.*, 65 F.4th 335, 341 (7th Cir. 2023) (holding that, under Rule 23, the court must certify a proper class action even if it is certain to fail on the merits). A defendant faced with a claim that it regards as facially meritless must resort to other procedural means to head off the action. *See, e.g.*, Fed. R. Civ. P. 12(b)(6); Fed. R. Civ. P. 12(c); Fed. R. Civ. P. 56. Because Froedtert's objections to the merits of Lutz's

underlying claims are not properly before the court, they are disregarded. The court turns to the objections that *are* properly before the court.

The court's role in authorizing notice to potential members of the collective action is limited to ensuring that employees receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche*, 493 U.S. at 170; *see also id* at 172 ("By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative."). "In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Id.* at 174. The court must avoid both suggesting its view on the litigation and permitting a notice that impermissibly attempts to either dissuade or solicit claims. *See McColley v. Casey's Gen. Stores, Inc.*, 627 F. Supp. 3d 972, 977 (N.D. Ind. 2022) ("The notice's purpose thus isn't to solicit claims.").

According to Lutz, she

> proposes collective treatment of two claims, both of which challenge Froedtert's uniform method of computing overtime compensation for overtime hours that it credited to its employees and provided some pay for. First, Plaintiff challenge[s] Froedtert's uniform policy of computing its employees hourly overtime pay as the straight time compensation for their overtime hours worked plus ½ of the weekly regular rate (computed as total pay other than overtime premiums divided by total hours worked).
>
> * * *

Second, Froedtert used the same method to compute its employees' worked holiday pay as it used to compute compensation for their hours worked over 40, so that hourly pay for working on holidays was also computed as the straight time rate for the holiday work plus ½ of the regular rate.

(ECF No. 22 at 1-2.) Thus, Lutz proposes sending the notice to every person "employed as an hourly non-exempt employee by Froedtert during the time period on or after April 9, 2021." (ECF No. 21-1 at 1.)

Froedtert argues that the notice should be more limited. "Only hourly, non-exempt employees that received Extra Pay and worked more than 40 hours in a workweek would be entitled to joining the collective under Claim No.1." (ECF No. 24 at 21.) "Only hourly, non-exempt employees that received Extra Pay, worked on a holiday, and worked more than 40 hours in that same workweek would be entitled to join the collective under Claim No. 2." (ECF No. 24 at 21.) "Any eligible employee entitled to join the collective under Claim No. 1 and/or Claim No. 2 may be disqualified or their rights may be limited based on when and if those employees endorsed their Settlement Checks in the prior action captioned: *Toni Fore, et al v. Froedtert Health*, 19-CV-1488 (E.D. Wis.)." (ECF No. 24 at 21.)

As the court understands Lutz's claims, they encompass more than Froedtert's Extra Pay (an incentive program adopted amidst the Covid pandemic) and holiday pay policies. She challenges Froedtert's means of calculating overtime pay vis-à-vis any sort

of non-discretionary bonus or premium (*e.g.*, a shift premium). In this regard, limiting notice to those who received Extra Pay would be too narrow.

The court also finds it unnecessary at this stage to limit notice (or advise recipients that their claim may be limited) with respect to employees who participated in *Fore v. Froedtert*. Matters of preclusion may be addressed later.

However, Lutz's proposal is overbroad in that she seeks to send notice to every hourly Froedtert employee. As the claims all relate to how Froedtert calculated overtime compensation, notice need be provided only to employees who were entitled to overtime pay during the relevant period. That, too, is likely overbroad because, again, the collective action encompasses only persons who worked overtime and were subject to any sort of premium or non-discretionary bonus that increased their regular pay rate above their straight time rate. But at the preliminary notice stage it is better to err on the side of overbreadth and to provide notice to a person who ultimately may be found to lack a claim rather than omit a person with a valid claim. Moreover, the administrative burdens of sifting out only those employees who received overtime compensation under the specific circumstances that give rise to Lutz's claims are likely disproportionate to the benefit obtained.

Froedtert also argues that the Notice should be amended to make clear that Froedtert disputes the plaintiff's claims. (ECF No. 24 at 21.) The notice already contains this information. At the end of the section headed, "DESCRIPTION OF THE

LAWSUIT," the notice states, "Froedtert denies that its methodology for computing its employees overtime pay violated the law. Absent a settlement the legality of Froedtert's methodology for computing its employees' overtime pay presents questions that the Court will decide." (ECF No. 21-1 at 2.) No more need be said on that issue.

Froedtert further argues that the notice fails to inform potential opt-in plaintiffs that they may be called to testify at a deposition or trial. (ECF No. 24 at 22.) Although true, such notice is unnecessary. There are many potential burdens and inconveniences associated with joining a lawsuit. A notice under the FLSA need not advise every would-be plaintiff of them. Doing so would create an unwieldy notice that would confuse and potentially intimidate rather than inform. The focus must be on informing potential plaintiffs of matters of the most consequence. A plaintiff who opts in but refuses to testify as required may simply forfeit his opportunity to participate. Emphasizing the potential burdens of joining a lawsuit may improperly deter would-be opt-in plaintiffs.

Froedtert also asks that the date "be revised to reflect the fact that the limitations period runs from the date conditional certification is granted, not the date Plaintiff filed her lawsuit." (ECF No. 24 at 22.) Lutz replies that the court can assess the timeliness of claims later. (ECF No. 27 at 14-15.) Lutz proposes to send notice to employees who worked for Froedtert "on or after April 9, 2021" (ECF No. 21-1 at 1), which is three years before Lutz filed her motion for conditional certification, not three years before she filed

her lawsuit. The filing of the motion for conditional certification does not stop the running of the statute of limitations. That clock continues to run until an employee either files his own lawsuit or opts to join this action. *McColley*, 627 F. Supp. 3d at 978 (citing 29 U.S.C. §§ 216(b), 256(b)); *see also Miller*, 2024 U.S. Dist. LEXIS 86393, at *10 (denying motion to equitably toll period between filing of lawsuit and the filing of the consent to join the lawsuit).

Thus, any notice will be over-inclusive. But as with any application of a statute of limitations, equitable tolling may apply. In conditionally certifying an action and approving notice, courts must be mindful that this is merely "a preliminary, non-final step that does not adjudicate any party's rights." *In re New Albertsons, Inc.*, No. 21-2577, 2021 U.S. App. LEXIS 26966, at *6 (7th Cir. Sep. 1, 2021). In light of the potential for equitable tolling, it is appropriate to cast a slightly wider net at this stage even though it may result in notice to persons whose claims are ultimately found to be time barred.

Froedtert further objects to the location of the statement that the court has not expressed an opinion on the merits of the suit. (ECF No. 24 at 22.) The court agrees that a more prominent disclaimer, combined with additional information, is more in keeping with the court's obligation of neutrality and will better inform recipients of the nature of the notice. The following disclaimer shall appear at the beginning of the notice, above the heading "NOTICE OF PENDENCY OF LAWSUIT":

9
Case 2:23-cv-00974-WED   Filed 06/07/24   Page 9 of 14   Document 28

> **THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF WISCONSIN AUTHORIZED THE PLAINTIFF IN *LUTZ V. FROEDTERT HEALTH, INC.*, CASE NUMBER 23-CV-974, TO SEND THIS NOTICE. THE COURT HAS NOT EXPRESSED AN OPINION ON THE MERITS OF THE SUIT. ANY QUESTIONS SHOULD BE DIRECTED TO PLAINTIFF'S COUNSEL, OR YOU MAY RETAIN YOUR OWN ATTORNEY.**

With this addition, the similar language found in the last sentence under the heading "WHO IS SENDING THE NOTICE" may be deleted.

Froedtert also argues that the time limit to opt in should be 45 rather than 90 days and compliance should be measured by when a plaintiff's opt-in notice is received by the court and not merely postmarked. (ECF No. 24 at 23.) Lutz replies, "The longer notice period is supported by the fact that the proposed collective includes at least many thousands of hourly non-exempt employees who worked for Froedtert throughout Southeastern Wisconsin, so that Plaintiff will likely need to locate many hundreds of updated addresses to effectuate mailing to as many potential collective members as possible." (ECF No. 27 at 15.)

The court also finds that 45 days may prove insufficient when considering the likelihood of employees having moved from where they lived when they last worked for Froedtert, the time it may take for undeliverable mail to be returned to a sender (or forwarded by the Postal Service), the plaintiff to locate a new address and resend the notice, the recipient to review and consider the notice, and the recipient to return a

consent form to the plaintiff. The court finds that 90 days is sufficient and no longer than necessary.

As for how to measure timeliness, it is perhaps more effective to consider that there are really two deadlines: (1) the deadline by which notice recipients are told they must consent; and (2) the deadline by which consents must be filed with the court. The latter is the one that actually matters. A plaintiff becomes a part of the lawsuit (and the statute of limitations stops running) only when his consent is filed with the court. *See Miller*, 2024 U.S. Dist. LEXIS 86393, at *11 (citing 29 U.S.C. § 256(b)). A deadline for filing consents is necessary to effectively administer a collective action because it allows the action to proceed with clarity as to who has joined the lawsuit. Untimely consents stand to disrupt and delay the proceedings.

For plaintiff's counsel to be able to meet the court's deadline for filing consents, it is necessary to first set a deadline for opt-in plaintiffs to return the consent forms to plaintiff's counsel. Although other courts have fixed deadlines in terms of when the consent is postmarked, phrasing this deadline in terms of when the notice must be received by counsel (as opposed to merely postmarked) is more likely to be effective and administratively efficient. It avoids the problem of a postmarked consent arriving after the deadline for filing consents with the court and either a plaintiff losing the opportunity to participate or the action being disrupted by an untimely addition. Outside of filings by prisoners, who have no other practical means for filing other than

mail and who have no ability to control the frequent institutional delays in processing mail, the mailbox rule is generally an inefficient means of gauging timeliness.

As for the deadline by which consents must be filed, there is no basis for deeming a consent as having been filed when postmarked as opposed to filed with the court. *Miller*, 2024 U.S. Dist. LEXIS 86393, at *11 ("[T]he plaintiffs have provided no legal support for deeming a putative plaintiff's consent filed when they placed it in the mail and for disregarding the FLSA's clear statement that an opt-in plaintiff's claim is begun when their consent is filed, 29 U.S.C. § 256(b).") But by setting a separate, later deadline by which consents must be filed with the court, there exists a de facto grace period whereby stragglers may still participate without undermining the certainty of the fixed cut-off date.

Therefore, the plaintiff shall update the notice to state that any consent to join the lawsuit must be received by plaintiff's counsel by the deadline. The deadline shall be fixed at 90 days from the date of mailing.

Plaintiff shall file all consents with the court no later than seven days after the deadline contained in the notice. The court filing deadline need not be included in the notice.

**IT IS THEREFORE ORDERED:**

For the reasons set forth above, Lutz has made a modest factual showing that she and the other Froedtert hourly employees who worked overtime were subject to a

common policy or plan to violate the FLSA. The court approves notice to all hourly Froedtert employees who worked more than 40 hours per week on or after April 9, 2021. Lutz's proposed notice is approved, subject to the following modifications.

- The disclaimer set forth above shall be added to the notice at the top of the first page.
- The "TO" portion should be modified to read, "All hourly non-exempt employees who worked overtime in any week for Froedtert Health Inc. ("Froedtert") on or after April 9, 2021."
- The paragraph that follows should be similarly modified to read, "You are receiving this Notice because you were employed as an hourly non-exempt employee by Froedtert and worked overtime during any week on or after April 9, 2021."
- The last sentence under the heading, "WHO IS SENDING THE NOTICE" shall be deleted.
- The term "post-marked" and "postmarked" shall be changed to "received."
- A date **90 days** following mailing of the notice shall be inserted in the blanks indicating the deadline by which the Consent Form must be received.

**IT IS FURTHER ORDERED** that all consents to opt into this action shall be filed with the court no later than **seven days** after the deadline contained in the notice for

consent forms to be received by plaintiff's counsel, *i.e.*, 97 days from the date of mailing of the notice.

Dated at Milwaukee, Wisconsin this 7th day of June, 2024.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge