# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

**NICHOLE LUTZ,**

*on behalf of herself and all others similarly situated,*

**Plaintiff,**

**v.**                                          **Case No. 23-CV-974**

**FROEDTERT HEALTH INC.,**

**Defendant.**

## DECISION AND ORDER

### INTRODUCTION

Plaintiff Nichole Lutz brought this action against defendant Froedtert Health Inc., alleging violations of the Fair Labor Standards Act (FLSA) and Wisconsin's Wage Payment and Collection Laws (WPCL). (2d Am. Compl., ECF No. 130.) The court certified two classes related to Lutz's claims for overtime compensation. (ECF No. 123.) Lutz also alleged two individual claims related to her on-call pay and meal period compensation. (ECF No. 130, ¶¶ 56, 63, 74.)

The parties each filed motions for partial summary judgment. (ECF Nos. 132, 136.) Lutz argues that no genuine dispute of material fact exists as to whether the defendants

violated federal and state labor law with respect to the two class-wide claims and with respect to her claim for on-call related overtime compensation. (ECF No. 143 at 1–4.) Froedtert contends that judgment should be entered in its favor as a matter of law with respect to the two class-wide claims and with respect to Lutz's individual claim for meal period compensation. (ECF No. 142 at 4–5.)

All parties have consented to the full jurisdiction of a magistrate judge. (ECF Nos. 9, 10). The court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a). The parties' motions have been fully briefed and are ready for resolution.

## FACTS

The court certified two classes in this action. The first subclass is defined as, "All hourly, non-exempt employees employed by Froedtert who, for the time period after November 7, 2021, to the present, during any workweek worked over 40 hours and received overtime pay at a rate lower than time and a half the regular rate earned for the workweek." (ECF No. 123 at 2.) The second subclass is defined as:

> All hourly, non-exempt employees employed by Froedtert who, for the time period after November 7, 2021, to the present, during any workweek worked over 40 hours and also received pay for working on a holiday, in that same workweek, that was computed at an hourly rate lower than time and a half the regular rate earned that same workweek.

(*Id.*)

The parties agree that Froedtert employees become eligible to receive an increase to their hourly rate of pay—known as a shift differential—for second or third shift if a

majority of the shift occurs during second shift hours that start at 3 p.m. or if a majority of the shift occurs during third shift hours that start at 11 p.m. (ECF No. 149, ¶ 16.) Froedtert employees become eligible to receive weekend differential pay for working on weekends. (*Id.*, ¶ 17.) Froedtert also operates an "Extra Pay" program which increases the normal hourly rate of pay for designated hours or shifts to incentivize certain critical employees to work additional hours or pick up extra shifts and enable operations to continue. (ECF No. 152, ¶ 74.)

To calculate the "regular rate" used for overtime compensation, Froedtert included its employees' shift and weekend differentials, as well as units of extra pay. (*See* ECF Nos. 143 at 5; 148 at 8.) At least for the relevant time period, Froedtert's payroll system excluded all holiday pay premiums from the computation of the "regular rate" used for overtime purposes. (ECF No. 149, ¶ 31.)

Lutz worked in Froedtert's Sterile Processing Department from October 2020 until August 2023. (ECF No. 145, ¶¶ 7–8.) Within the Sterile Processing Department, Lutz worked on the Clinic Team from February 2022 to April 2023. (*Id.*, ¶¶ 24, 27.) While on the Clinic Team, Lutz wore a Vocera device, which operates like a walkie-talkie. (*Id.*, ¶¶ 25–27, 36.) The Vocera device did not work when Lutz was off of Froedtert's premises. (*Id.*, ¶ 37.)

Lutz took her meal breaks in Froedtert's public cafeteria. (ECF No. 152, ¶ 22.) She answered her Vocera during meal breaks, except for occasions when she removed the

batteries from the Vocera. (ECF No. 145, ¶¶ 44, 48.) Froedtert did not maintain a written record of when employees took meal breaks during Lutz's stint in the Sterile Processing Department.[1] (*Id.*, ¶ 63.)

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it "might affect the outcome of the suit" and a dispute is "genuine" only if a reasonable factfinder could return a verdict for the non-movant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). "The ordinary standards for summary judgment remain unchanged on cross-motions for summary judgment: a court construes facts and inferences arising from them in favor of the party against whom the motion under consideration is made." *Cook v. Greenwood Hosp. Mgmt., LLC,* 704 F. Supp. 3d 874, 877 (E.D. Wis. 2023) (citing *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017)). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and [in] opposition to the motion for summary judgment." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016).

---

[1] Lutz also worked for Froedtert in various capacities before and after the relevant timeframe. (ECF No. 145, ¶¶ 4–11.)

# ANALYSIS

## I. Class Claims: Overtime Computation

The FLSA and Wisconsin's wage and hour laws mandate that employers pay employees an overtime rate of one and one-half times their regular rate of pay for all hours worked in excess of forty hours in a workweek. 29 U.S.C. § 207(a)(1) ("[N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce…for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."); Wis. Admin. Code § DWD 274.03 ("[E]ach employer subject to this chapter shall pay to each employee time and one-half the regular rate of pay for all hours worked in excess of 40 hours per week.").

In moving for summary judgment on her two class-wide claims Lutz argues that Froedtert: (1) improperly totaled weekly compensation when overtime was involved, and (2) improperly calculated the overtime rate when employees worked overtime during a week they also worked on a holiday. (ECF No. 143 at 9, 16.) Froedtert contends that Lutz's class-wide claims fail because: (1) her challenge to the way in which overtime was calculated is contradicted by the Department of Labor (DOL) regulation on overtime (29 C.F.R. § 778.110(b)), the DOL's Fact Sheet #56C,[2] and the DOL's online overtime

---

[2] Available at https://www.dol.gov/agencies/whd/fact-sheets/56c-bonuses.

calculator,[3] and (2) her holiday overtime challenge is contradicted by the DOL's regulation on "special days" (29 C.F.R. § 778.203(b)) and the DOL's Field Operations Handbook. (ECF No. 142 at 5.)[4]

### A.1.    Subclass One: Computation Method under Federal Law

The FLSA defines "regular rate" as "all remuneration for employment paid to, or on behalf of, the employee," subject to certain enumerated exemptions. 29 U.S.C. § 207(e). Setting aside holidays, the parties agree that Froedtert correctly calculated the employees' "regular rate" by dividing each employee's total weekly compensation (including extra pay and shift and weekend differentials) by the number of hours worked. (*See* ECF Nos. 143 at 5; 148 at 8.); *see also* 29 C.F.R. § 778.109 ("The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid."). After determining the regular rate of pay, Froedtert multiplied the number of hours worked over forty by one-half the "regular rate" to determine the overtime premium an employee should receive in addition to the total weekly compensation earned. (*See* ECF No. 148 at 13–19.)

Lutz alleges that Froedtert relied on administrative guidance that is inconsistent with the FLSA's requirement that overtime pay must equal one and one-half times the

---

[3] Available at https://webapps.dol.gov/elaws/otcalculator.htm.
[4] Citations in this decision are to the page numbers provided by ECF, not the page numbers listed at the bottom of the parties' filings.

"regular rate." (ECF No. 144 at 4–5 (citing 29 U.S.C. § 207(a)(1)).) Lutz characterizes Froedtert's approach as a "hybrid" method that improperly "credits" the shift and weekend differentials earned during the first forty hours worked in a week toward the required overtime compensation. (ECF No. 143 at 10.) Lutz argues that Froedtert should identify the total amount an employee actually earned during the first forty hours each week (including any extra pay or shift and weekend differentials, regardless of whether that amount is more or less than forty times the "regular rate") and *then* add one and one-half times the "regular rate" for each overtime hour worked. (*Id.*)

To illustrate, suppose an individual works shifts carrying a higher hourly rate in the first forty hours in a week than she earns in each additional hour. For example, assume the employee earns a $30 per hour for each of the first forty hours in a week ($1,200) and $15 for each of ten hours subsequently worked that week ($150), for total compensation of $1,350. The employee's "regular rate" would be $27 ($1,350 divided by fifty hours). Applying Froedtert's method for computing overtime compensation, the employee would receive her total compensation of $1,350 plus an overtime premium of $135 (one-half of $27 times 10 overtime hours) for a total of **$1,485**. Under Lutz's approach, the employee would receive $1,200 (what she earned during her first forty hours) plus $405 ($27 "regular rate" multiplied by 1.5, multiplied by ten overtime hours) for a total of **$1,605**.

For comparison, consider an employee who works shifts carrying a lower hourly rate in the first forty hours in a week than she earns in each additional hour. For example, assume she earns $25 per hour for each of the first forty hours ($1,000) and $35 for each of ten additional hours worked that week ($350), resulting in the same total compensation of $1,350. The employee's "regular rate" would still be $27 ($1,350 divided by fifty hours). Applying Froedtert's method for calculating overtime compensation, the employee would receive total compensation of $1,350 plus an overtime premium of $135 (one-half of $27 times 10 overtime hours) for the same total of **1,485**. Under Lutz's approach, the employee would receive $1,000 (what she earned for the first forty hours) plus $405 ($27 "regular rate" multiplied by 1.5, multiplied by ten overtime hours) for a total of **1,405**.

As illustrated, Froedtert's approach results in the same total compensation (including overtime premiums) regardless of when the employee works higher paying shifts each week. Froedtert's calculation is consistent with guidance from the Department of Labor, as illustrated by Example B from the agency's Fact Sheet #56C. *See* "Fact Sheet #56C: Bonuses under the Fair Labor Standards Act (FLSA)," U.S. Dep't of Labor, available at https://www.dol.gov/agencies/whd/fact-sheets/56c-bonuses. Alternatively, Lutz's method variably results in higher or lower totals depending on the timing of shifts carrying extra pay. Accordingly, Lutz's approach would benefit employees who work higher paying shifts during the first forty hours (because it would drive up the "regular rate" that would be multiplied by the overtime hours).

The illustration of chronological impacts reveals the heart of the parties' conflict. Turning to the applicable law, Lutz relies on 29 U.S.C. § 207(h)(2), which authorizes employers to "credit" certain extra compensation—as described in paragraphs (5), (6), and (7) of subsection 207(e)—toward the required overtime compensation. (ECF No. 143 at 16.) The parties agree that the extra pay in question does not qualify under paragraphs (5), (6), and (7) of subsection 207(e). (*Id.* at 12; ECF No. 148 at 10.) Because the extra pay falls outside these categories, Lutz argues that Froedtert impermissibly "credits" it against the overtime owed by keeping those amounts figured into the one and one-half times calculation. (ECF No. 143 at 16.)

Lutz cites the Seventh Circuit's decision in *Howard v. City of Springfield*, 274 F.3d 1141, 1147 (7th Cir. 2001). (ECF No. 154 at 5.) In *Howard,* the court found certain extra pay did not fall within § 207(e)(7) as had been alleged and, therefore, could not be used to offset overtime liability pursuant to § 207(h)(2). 274 F.3d at 1147. Importantly, the court determined that the extra pay could be not used to "credit" or "offset" the overtime owed because extra pay under § 207(e)(7) is excluded from calculation of the "regular rate" and only then becomes "creditable" toward overtime compensation owed. *See id.*; 29 U.S.C. § 207(e)(7), (h)(2).

Lutz uses the term "credit" differently. She suggests that earnings are "credited" against overtime liability by their blended overall incorporation into the "one and one-half" times calculation of the "regular rate." (ECF No. 154 at 5.) But the statute explicitly

defines "regular rate" to include "all remuneration for employment paid to, or on behalf of, the employee," subject to certain enumerated exemptions that the parties agree do not apply to this claim. *See* 29 U.S.C. § 207(e); ECF Nos. 143 at 12, 148 at 10.

Although the Seventh Circuit has not had occasion to opine on this issue, the Tenth Circuit Court of Appeals has upheld the DOL-prescribed methodology, including the employer's use of the one-half multiplier for each overtime hour worked. *Chavez v. City of Albuquerque*, 630 F.3d 1300, 1312–13 (10th Cir. 2011). The *Chavez* court observed that, "[a]bsent evidence of an intent to manipulate compensation to avoid FLSA liability, this result does not violate the FLSA." 630 F.3d at 1312–13.

At least two federal district courts have also struck down challenges like Lutz's. In *Delpin Aponte v. United States*, 116 Fed. Cl. 5 (2014), *aff'd*, 620 F. App'x 960 (Fed. Cir. 2015), the court found that the employer properly followed DOL regulations, "which merely require adding one-half times the regular rate of pay for the number of overtime hours worked in a week, once the regular rate has been accurately calculated." 116 Fed. Cl. at 21 (citing 29 C.F.R. §§ 778.110(b), 778.111, 778.112, 778.118, 778.311, 778.313(b)). The court further observed that this method was consistent with the FLSA's "aggregate" approach, "which bases overtime pay not on the rate at which an hour would otherwise have been paid were it not overtime, but instead employs an average rate for purposes of this pay, and allows compensation associated with non-overtime hours to satisfy overtime pay requirements." *Id.* (citing 29 U.S.C. § 207(a), (e), (h)).

In *Urbani v. Wellesley College*, No. 13-CV-11768-ADB, 2016 WL 6571247, at \*10, 2016 U.S. Dist. LEXIS 185633, at \*30–31 (D. Mass. Jan. 12, 2016), the court similarly determined that, "for purposes of FLSA overtime compensation, an employee's 'regular rate' is not…always equivalent to the rate at which he or she is paid for his regularly-assigned shifts."

Consistent with the foregoing, this court interprets the FLSA as requiring employers to pay at least one and one-half times of what amounts to a blended average. *See* 29 U.S.C. § 207(a)(1), (e) (defining "regular rate" to include "all" remuneration subject to certain enumerated (and presently irrelevant) exemptions). Because the "regular rate" is an aggregated amount that already accounts for additional pay like shift and weekend differentials, removing that extra pay in the addition process (as Lutz suggests) would result in over-and under-counting of those differentials. (*See supra* at 7–8 (court's hypothetical accounting comparison).) If Lutz wants Froedtert to separately account for the overtime hours based solely on the differential-adjusted rates earned during overtime hours, then § 207(g)(2) would permit that accounting, but the parties must reach an agreement or understanding before performing the work. *See* 29 U.S.C. § 207(g). The parties have not entered into such an agreement. (*See* ECF Nos. 143 at 10–11; 148 at 12.)

This challenge boils down to fundamentally different applications of the term "credit." The FLSA authorizes "crediting" certain extra pay toward the overtime obligation when that extra pay is statutorily excluded from the calculation of the regular

rate. *See* 29 U.S.C. §§ 207(e), (h). Lutz characterizes the inclusion of other types of extra pay into the one and one-half calculation as "crediting" even when that extra pay is statutorily required to be included in the "regular rate." (ECF No. 143 at 9.) Because the FLSA permits the type of "crediting" Lutz challenges, the court concludes that Froedtert is entitled to judgment as a matter of law, under federal law, with respect to the class-wide overtime computation claim.

### A.2. Subclass One: Computation Method under State Law

As for Lutz's WPCL claim, the WPCL does not explain how to calculate the "regular rate." *See generally* Wis. Admin. Code § DWD 274. Nor does the WPCL contain any language parallel to the FLSA's section on crediting excluded categories of pay toward overtime compensation. *Compare* Wis. Admin. Code § DWD 274, *with* 29 U.S.C. § 207(h)(2). Froedtert asserts that the court's interpretation of the WPCL should match its interpretation of the FLSA with respect to the regular rate calculation for overtime compensation. (ECF No. 148 at 27.) Lutz contends that the omissions make her claim even stronger under state law. (ECF No. 143 at 25.)

When "the Wisconsin administrative regulations at issue…are substantially similar to federal regulations, federal cases may assist in [the] analysis." *United Food & Com. Workers Union, Loc. 1473 v. Hormel Foods Corp.*, 876 N.W.2d 99, 109 (Wis. 2016) (citations omitted); *see also Luckett v. Bodner*, 769 N.W.2d 504, 511 (Wis. 2009) ("When 'a state rule mirrors the federal rule, [the state courts] consider federal cases interpreting the

rule to be persuasive authority.'") (quoting *State v. Evans*, 617 N.W.2d 220, 222 n.2 (Wis. Ct. App. 2000)). Here, the state regulation's use of the term "regular rate" tracks the language used in the FLSA and DOL regulations. *Compare* Wis. Admin. Code § DWD 274.03, *with* 29 U.S.C. § 207(e).

Lutz does not provide any persuasive authority to support a different approach. She argues that the lack of language permitting crediting in the WPCL means that "no credits are permitted." (ECF No. 143 at 3.) As previously explained, Lutz employs a different application of the term "credit." Therefore, the lack of state law parallel to § 207(h)(2) is immaterial. Lutz insists that employees must receive the full (differential-included) amount of wages earned during the first forty hours, plus one and one-half times the "regular rate." (*Id.* at 25.) Paradoxically, Lutz does not contend that differential pay should be excluded from the calculation of the "regular rate" under state law. (*Id.*) The court ponders why an employer would use the federal definition of "regular rate"—potentially driving up the "regular rate" by inclusion of differential pay—only to exclude the differentials from the total summation and effectively overcount that extra pay. Under state law, Lutz appears even more clearly to want to have her cake and eat it, too.

Accordingly, Froedtert is also entitled to judgment as a matter of law with respect to the class-wide WPCL overtime computation claim.

### B.1. Subclass Two: Holiday Hours under Federal Law

As explained above, the "regular rate" under the FLSA includes all remuneration for employment, subject to certain enumerated exemptions identified in 29 U.S.C. §§ 207(e)(1)–(8). Relying on the "special days" exemption under § 207(e)(6), Froedtert excluded extra compensation it paid for work on holidays when calculating the "regular rate" for overtime purposes. (ECF No. 142 at 19.) Lutz argues that the extra compensation in question did not qualify for the § 207(e)(6) exemption. (ECF No. 143 at 2.)

To qualify for this exemption, the extra compensation must be "paid for work…on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days." 29 U.S.C. § 207(e)(6). When determining "the rate established in good faith for like work performed in nonovertime hours on other days," the corresponding DOL regulation distinguishes between two different categories of employees. 29 C.F.R. § 778.203(a). On the one hand, "[w]here an employee is hired on the basis of a salary for a fixed workweek or at a single hourly rate of pay, the rate paid for work on 'special days' must be at least time and one-half his regular hourly rate in order to qualify under section 7(e)(6)." 29 C.F.R. § 778.203(a). Alternatively, for an employee who "is a pieceworker or…works at more than one job for which different hourly or piece rates have been established," the extra compensation will qualify for the exemption if it is "one and one-half times either

(1) the bona fide rate applicable to the type of job the employee performs on the 'special days', or (2) the average hourly earnings in the week in question." 29 C.F.R. § 778.203(a).

Lutz contends that she and the other class members fall into the first category for employees who work at a single hourly rate of pay. (ECF No. 143 at 18–20.) She points to a sample week for class member Laura Arena, who received a base rate of pay plus a shift premium, as well as weekend differentials and units of extra pay.[5] (*Id.* at 6.) Lutz argues that Arena did not work different jobs even though she ultimately earned different rates during different workdays. (*Id.* at 17–18.) In advocating for treatment in the first DOL category, Lutz further contends that this category calls for one and one-half times the "regular rate" as calculated on the weekly basis described in the first claim. (*Id.* at 19.)

But calculating the "regular rate" would not be necessary for first-category employees who earn a single hourly rate of pay because the relevant rate would simply be that singular rate. On the contrary, the concept of the "regular rate" is baked into the second DOL category (for employees who earn different rates for different jobs), which provides that the extra pay in question may qualify for exemption if it is one and one-half times the "average hourly earnings in the week in question." The difference in language—"average hourly earnings" instead of "regular rate"—is necessary because it would make little sense to calculate the "regular rate" before determining whether a

---

[5] Froedtert argues that Arena also received holiday premium pay during the week in question. (ECF No. 149 at ¶ 23.)

certain amount should be excluded from the "regular rate." Ultimately, this comparison reveals the logical reason that employees like the class members should be treated as employees who work different jobs for different rates.

Lutz offers Arena's sample week of November 17 to 23, 2023, in which Arena received a base rate of $32.24 per hour plus a shift premium of $3 per hour, as well as extra pay and weekend differential. (ECF No. 143 at 6.) In this example, Arena's rate applicable to the job she performed on the special day was $35.24 ($32.24 base rate plus the $3 shift premium) because the holiday in question was Thanksgiving and would not have been subject to the weekend differential. Because this rate satisfies federal minimum wage standards and Lutz does not argue that Froedtert failed to establish it in good faith, this rate also constituted Arena's "bona fide" base rate. *See* 29 C.F.R. § 778.203(b). Lutz acknowledges that Arena received just over $62 per hour on the holiday. (ECF No. 143 at 6, 19.) That effective hourly rate is greater than one and one-half times Arena's bona fide rate that she would have been paid had it not been a holiday ($35.24 bona fide rate multiplied by 1.5 equals $52.86). Accordingly, the extra pay in question qualifies for "regular rate" exemption for employees who earn different rates. *See* 29 C.F.R. § 778.203(a).

Froedtert also offers the example of Lutz's pay from the week of November 26 to December 2, 2021. (ECF No. 142 at 20.) During that week, Lutz earned an hourly rate of $18.34. (ECF No. 145, ¶ 66.) Lutz was paid for ten hours of work on the day after

Thanksgiving, which Froedtert deems a holiday, and did not earn any shift or other differential pay. (*Id.*, ¶¶ 66–67.) Lutz received holiday premium pay, resulting in total daily compensation of $288.15, or approximately $28.82 per hour. (*Id.*, ¶ 67.) That rate is more than one and one-half times Lutz's bona fide base rate ($18.34 times 1.5 equals $27.51). Therefore, Froedtert paid Lutz at least one and one-half times the bona fide rate applicable to her job that she would have been paid had it not been a holiday. *See* 29 C.F.R. § 778.203(a).

Lutz puts the cart before the horse by calculating the "regular rate" before determining whether holiday pay should be excluded from the "regular rate" computation. (*See* ECF No. 143 at 19.) Because the holiday pay in question qualifies for exclusion from the "regular rate" calculation under § 207(e)(6), Froedtert is entitled to judgment as a matter of law under federal law with respect to subclass two's claim for overtime compensation.

### B.2.    Subclass Two: Holiday Hours under State Law

As for the state law claim,[6] Wisconsin's wage and hour laws do not include a provision equivalent to § 207(e)(6) that allows an employer to treat holiday premiums like overtime premiums that can be excluded from the "regular rate." Thus, Lutz argues

---

[6] Lutz did not plead the holiday-related overtime claim under Wisconsin law in the operative complaint. *See* ECF No. 130. However, Lutz asserts that a plaintiff can change legal theories without amending the complaint (ECF No. 142 at 28) and Froedtert does not contest this request (ECF No. 148).

that Wisconsin law requires employers to include holiday premiums in computing the "regular rate." (ECF No. 143 at 27.)

As addressed with respect to the first class-wide claim, Wisconsin law does not define the "regular rate" at all. *See* Wis. Stat. § 103.02 (directing the Department of Workforce Development (DWD) to classify periods of time "to be paid for at the rate of at least one and one-half times the regular rates"); Wis. Admin. Code § DWD 274.03 (requiring affected employers to "pay each employee time and one-half the regular rate of pay for all hours worked in excess of 40 hours per week.").

Lutz contends that the court should interpret state law to follow the federal definition of "regular rate" by calculating the "regular rate" based on "all" remuneration but should not subject the calculation to the federally enumerated exceptions (or at least the holiday provision under § 207(e)(6)). (ECF No. 143 at 27.) Froedtert argues that the court should apply the full federal definition expressed in 29 U.S.C. § 207(e) (including the holiday exception) because the state overtime law regarding time and one-half compensation was implemented after, and mirrors, the federal statute. (ECF No. 152 at 12–13.)

Although Wisconsin has not promulgated any related regulations, the DWD maintains a webpage for frequently asked questions about overtime. *See* "Hours of Work and Overtime Frequently Asked Questions," *Wis. Dep't of Workforce Dev.*, available at https://dwd.wisconsin.gov/er/laborstandards/overtimefaq.htm. This webpage offers a

definition of "regular rate of pay" and a sample calculation that are consistent with the FLSA, except that the definition does not mention any holiday premium or other "regular rate" exemptions. *See id.* Having said that, this webpage has no authoritative effect because "it is neither an exercise in notice-and-comment rulemaking nor the outcome of administrative adjudication." *See Van Straaten v. Shell Oil Prods. Co. LLC*, 678 F.3d 486, 488 (7th Cir. 2012).

Turning back to the state law itself, "'[s]tatutory interpretation begins with—and, absent ambiguity, is confined to—the language of the statute,' and statutory words and phrases, unless technical in nature or carrying a peculiar legal meaning, are construed according to common and ordinary usage." *Paczkowski v. My Choice Fam. Care, Inc.*, 384 F. Supp. 3d 991, 993 (W.D. Wis. 2019) (citing *Fuchsgruber v. Custom Accessories, Inc.*, 628 N.W.2d 833 (Wis. 2001); *Peterson v. Midwest Sec. Ins. Co.*, 636 N.W. 2d 727 (Wis. 2001)). "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.* (citing *State ex rel. Kalal v. Circuit Court for Dane Cty.*, 681 N.W.2d 110, 124 (Wis. 2004)).

The common and ordinary meaning of "regular rate" in the overtime context is that amount which an employer typically pays for each hour worked. The term "regular" implies that other, special rates may exist. Because Froedtert provides extra compensation for a variety of reasons, the distinction between "regular" and "special" rates is not self-

evident. However, the statutory context extends to "the terms' usage in relation to the language of closely related statutes and how the court had interpreted those terms prior to the legislature enacting the statute in question." *United Am., LLC v. Wisconsin Dep't of Transportation*, 959 N.W.2d 317, 320 (Wis. 2021) (internal citations omitted). The FLSA is a closely related statute enacted decades before Wisconsin promulgated its overtime regulation. *Compare* Fair Labor Standards Act of 1938, Pub. L. No. 676-718, § 7, 52 Stat. 1060, 1063 (1938), *with* 255B Wis. Admin. Reg. (April 1, 1977). Congress added the definition of "regular rate" and the enumerated exemptions to its calculation (including for holiday premium pay) in 1949. *See* Fair Labor Standards Amendments of 1949, Pub. L. No. 736-393, § 7(d), 63 Stat. 910, 913–914 (1949). No reasonable litigant can argue that Wisconsin lawmakers were not aware of the term's federal meaning when they elected to use the term "regular rate" without further definition.

Lutz's position is also belied by the fact that neither federal nor state law requires employers to pay additional compensation for work performed on holidays. Obviously, the FLSA's exemption of holiday premium pay from the "regular rate" calculation reduces employees' financial incentive to work overtime during weeks they also work on a holiday. Ultimately, employers and employees are left to evaluate these consequences and negotiate accordingly. After all, overtime laws construct a floor and not a ceiling. Because the ordinary meaning of "regular rate" is informed by the federal statutory

context, the court does not find it appropriate to slice and dice the definition according to Lutz's whim.

Froedtert is entitled to judgment as a matter of Wisconsin law with respect to subclass two's claim for holiday-related overtime compensation.

## II. Individual Claims: On-Call Hours and Meal Periods

In addition to the class-wide claims, Lutz asserts two individual claims, alleging (1) that Froedtert should have included on-call pay in the "regular rate" calculation for overtime (ECF No. 130, ¶ 56), and (2) that all her meal breaks were compensable because she was not free to leave the premises (*Id.*, ¶ 74), and even if not, that certain meal breaks were compensable because work responsibilities interrupted the breaks (*Id.*, ¶ 63). Lutz moved for summary judgment only with respect to the on-call pay (ECF No. 143 at 1–4), while Froedtert moved for summary judgment only with respect to the mealtime compensability. (ECF No. 142 at 20.)

### A. On-Call Hours

Froedtert does not contest liability on Lutz's individual on-call pay claim. (ECF No. 148 at 30.) Froedtert acknowledges that payroll records reflect Lutz received on-call pay during weeks that she worked more than forty hours. (ECF No. 142 at 24.) However, Froedtert contends that damages cannot be determined at this time because Lutz testified she was not aware if she worked on-call during the applicable limitations period and, if

she did, whether she worked overtime during that same period. (ECF No. 148 at 30.) Lutz does not contest Froedtert's position. (ECF No. 154 at 16.)

Because the parties have not provided further briefing on the issue of damages, the court makes the limited finding that judgment as a matter of law is appropriate with respect to Froedtert's liability for on-call pay during overtime weeks, subject to Lutz establishing she suffered damages during the relevant period.

### B. Meal Periods

As for mealtime compensability, the FLSA and Wisconsin's wage-and-hour law require that employees be compensated for meal periods if the employee is not completely relieved from all work duties. 29 C.F.R. § 785.19(a) ("Bona fide meal periods are not worktime.…The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period.…The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating."); Wis. Adm. Code § DWD 274.02(3) ("The employer shall pay all employees for on-duty meal periods, which are to be counted as work time. An on-duty meal period is a meal period where the employer does not provide at least 30 minutes free from work."). Although federal regulations specify that bona fide meal periods do not require the ability to leave the premises (29 C.F.R. § 785.19(b)), Wisconsin law provides that "[a]ny meal period where the employee is not

free to leave the premises of the employer will also be considered an on-duty meal period." Wis. Adm. Code § DWD 274.02(3).

### 1. Ability to Leave during Meal Periods

According to Lutz, her manager told her in the fall of 2020 that she could not leave Froedtert's campus during meal periods without the manager's permission because Froedtert would not have coverage for her position if she did not return. (ECF No. 147, ¶ 16.) Lutz alleges this conversation occurred while she worked as a dietary aide in Froedtert's Dietary office. (ECF No. 152, ¶ 6.)

Subsequently, in October 2020, Lutz began working in Froedtert's Sterile Processing Department. (ECF No. 152 at ¶ 7.) Lutz believed the on-campus mealtime restriction applied to her new position in the Sterile Processing Department because (1) there were some days when she was the sole person responsible for cleaning and answering questions about certain equipment, (2) she had to be available to return early from her lunch period to answer questions about time-sensitive assignments, if she could not answer the questions over the phone, and (3) nobody in the Sterile Processing Department told her that she was free to leave the Froedtert campus during meal periods. (ECF No. 147 at ¶ 17.)

Froedtert argues that, even if Lutz's manager in the Dietary office told her she could not leave during meal periods, that conversation has no effect on her subsequent work in the Sterile Processing Department because it is undisputed that the individual

was no longer Lutz's manager and that August 2020 was well before the period covered by the statute of limitations. (ECF No. 142 at 32–33.) Although a simple change in managers may not be dispositive, the fact that the "rule" that she could not leave Froedtert's campus was communicated by a manager for a prior job in a different department rather than established by any formal policy supports Froedtert's position.

Lutz also alleges that she had to remain on the Froedtert campus during the relevant time in order to answer the Vocera device, which only worked on campus. (ECF No. 144 at 27.) But she admits to periodically removing the batteries from the Vocera device to avoid disruptions during her meal period. (*Id.*) While Lutz asserts that Froedtert employees began contacting her on her personal cellphone when they could not reach her on the Vocera device, she does not allege any reprimand or other consequences arose from being unreachable on the Vocera device during her meal periods. (*See generally id.*) Accordingly, the geographic limitations of the Vocera device do not support Lutz's contention that she was not free to leave during meal breaks.

Lutz further insists that she had to remain on campus because she was aware of Froedtert's written policy stating that staff members must "be free to leave the premise" during meal periods. (ECF No. 144 at 30; *see also* ECF No. 147-2 at 2 (policy regarding Sterile Processing Department procedure for meal periods); ECF No. 152, ¶ 37 (Froedtert does not dispute that Lutz found this policy in a binder in the Sterile Processing Department's break room in June or July of 2023).) Lutz contends that the use of the

singular "premise" as opposed to "premises" meant she could only leave her work area and not the entire Froedtert campus. (ECF No. 144 at 30.)

The use of the singular "premise" in the policy was likely a typographical error, given that the word "premise" generally refers to "something assumed or taken for granted," while "premises" means "a tract of land with the buildings thereon." "Premise," *Merriam Webster Dictionary*, available at https://www.merriam-webster.com/dictionary/premise. The ordinary understanding of the term "premise" as used in the context of the policy would leave one to believe that an employee could leave the work location as a whole.

At her deposition Lutz was asked whether she believed she was allowed to leave the premises to take a lunch break when she had a Vocera device. (ECF No. 142 at 144:5–6.) Lutz responded, "No. I had to have permission to leave." (*Id.* at 144:8.) Lutz points to another one of Froedtert's written policies directing staff to obtain permission from a supervisor prior to "leaving the assigned work location during a shift." (*See* ECF No. 144 at 30; *see also* ECF No. 147-1 (policy in question).) Froedtert contends that Lutz misunderstands the policy because it is intended to cover employees needing to leave their shifts for matters like dentist appointments and does not override meal policies in theory or in practice. (ECF No. 152, ¶ 39.) Ultimately, Lutz's deposition testimony about needing permission, combined with Froedtert's potentially conflicting policies, presents a genuine dispute of fact as to whether Lutz could leave during her meal periods.

In sum, the Vocera device and prior managerial advice are immaterial to Lutz's ability to leave for meal periods while working in the Sterile Processing Department. Lutz's alleged misinterpretation of the term "premise" is also not a reasonable basis for concluding that Froedtert did not permit her to leave its facilities during meal periods. However, the fact that Froedtert may have required Lutz to get permission to leave means that, absent such permission, she was not free to leave. Therefore, Froedtert's motion for summary judgment will be denied with respect to Lutz's individual claim under Wisconsin law that all meal periods were compensable due to an on-campus restriction.

### 2. Interruptions during Meal Periods

The Seventh Circuit "has adopted the predominant benefits test for determining whether meal periods are work periods." *Barefield v. Vill. of Winnetka*, 81 F.3d 704, 710 (7th Cir. 1996) (citing *Alexander v. City of Chi.*, 994 F.2d 333, 337 (7th Cir. 1993) (adopting the test articulated in *Lamon v. City of Shawnee, Kansas*, 972 F.2d 1145, 1157–58 (10th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993))). "Under this test, a meal period is not work time if 'the employee's time is not spent predominantly for the benefit of the employer.'" *Id.* (quoting *Alexander*, 994 F.2d at 337). "The *Lamon* predominant benefit test—while conceivably applicable purely as a matter of law in some instances—necessarily involves some informed appraisal of how the particular mealtime limitations actually affected the [employees'] mealtimes." *Alexander*, 994 F.2d at 339 n.10.

According to Lutz, Froedtert did not regularly allow her thirty minutes of uninterrupted time for meal breaks. (ECF No. 130 at ¶ 28.) Lutz estimates that, between February 2022 and April 2023, her supervisors interrupted her meal periods, on average, at least once per week by calling with work-related questions and asking her to come back to the work area. (ECF No. 147, ¶ 15.) Lutz asserts that the supervisors knew she was taking her meal break when they called because she would notify the relevant supervisor when she was beginning her meal period each day. (ECF No. 130, ¶ 26.) Lutz claims that the interruptions lasted five minutes or longer. (*Id.*, ¶ 28.) The parties agree that Froedtert automatically deducted thirty minutes for Lutz's meal periods unless she canceled a meal break on the timekeeping system or notified her supervisor that she did not take a meal break. (ECF No. 152, ¶ 29.)

Froedtert attacks Lutz's claim from four distinct angles.

### i.    *Knowledge of Meal Interruptions*

First, Froedtert contends it did not know Lutz worked during compensated meal periods. (ECF No. 142 at 26–27.) Froedtert asserts that Lutz had the responsibility to cancel her mealtime deduction or notify her supervisor when an interruption occurred during her meal break. (*Id.* at 24.) Froedtert also points out that it only had to *provide* a meal break; it was not required to ensure the employee *took* the time available. (*Id.* at 24.) Indeed, "the FLSA stops short of requiring the employer to pay for work it did not know about, and had no reason to know about." (*Id.* at 25 (quoting *Kellar v. Summit Seating, Inc.*,

664 F.3d 169, 177 (7th Cir. 2011)).) However, "[e]ven if an employer has promulgated a rule against overtime or a procedure to report overtime, the employer may still be liable if it should have discovered by exercising reasonable diligence that its employees were not following the rule." *Boelk v. AT & T Teleholdings, Inc.*, No. 12-CV-40-BBC, 2013 WL 3777251, at *6, 2013 U.S. Dist. LEXIS 101111, at *17 (W.D. Wis. July 19, 2013) (citing 29 C.F.R. § 785.13; *Reich v. Dep't of Conservation & Nat. Res.*, 28 F.3d 1076, 1082 (11th Cir. 1994)).

Lutz argues that Froedtert reasonably should have known she worked during her meal periods because the person who called her for work questions during meal breaks was the same person who she advised she was beginning her meal break. (ECF No. 144 at 24; *see also* ECF No. 152, ¶¶ 10–12.) Lutz could not recall if she saw any of Froedtert's policies that described procedures to follow in the event of an interrupted meal period. (ECF No. 152, ¶ 31.) Even if she had, Lutz argues that Froedtert's policies described how meal periods "should" operate and did not conclusively communicate that employees could cancel their meal break for timekeeping purposes if it was cut short. (ECF No. 144 at 25.)

The court agrees that the policy to which Froedtert has pointed communicates that employees need to alert their supervisors if no meal break is taken at all but that reasonable factfinders could disagree about whether meal periods shortened by interruptions should be treated the same way. (*See* ECF No. 142 at 27.) Accordingly, a

genuine dispute of material fact exists as to what Froedtert knew about Lutz's work during meal periods.

### ii. Business Records

Second, Froedtert asserts that Lutz's declaration suffers from inconsistencies with its Vocera phone records. (ECF No. 142 at 30–31.) Froedtert asserts that its records reflect Lutz answered a call on her Vocera device, during her typical meal break, fourteen times between February 2022 and September 2022. (*Id.* at 30.) Froedtert further contends that these calls lasted less than one minute each. (*Id.* at 31; *see also* ECF No. 140-1 (Froedtert's record of Lutz's Vocera activity).)

Lutz argues that Froedtert has not laid the necessary foundation to establish the Vocera records are admissible as business records and, even if it did so, the records are insufficient to negate Lutz's allegations because her supervisors also called and texted her on her personal cellphone. (ECF No. 145, ¶ 58.)

"The business-records exception removes the hearsay bar for records kept in the course of a regularly conducted business activity if making the records is a regular practice of that business activity, so long as 'neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.'" *Miniature Precision Components, Inc. v. Standex Elecs., Inc.*, 571 F. Supp. 3d 955, 967–68 (E.D. Wis. 2021) (citing *Jordan v. Binns*, 712 F.3d 1123, 1135 (7th Cir. 2013); Fed. R. Evid. 803(6)). To be considered for summary judgment purposes, "[t]he evidence need not be admissible

in form, but must be admissible in content, such that, for instance, affidavits may be considered if the substitution of oral testimony for the affidavit statements would make the evidence admissible at trial." *Wheatley v. Factory Card & Party Outlet*, 826 F.3d 412, 420 (7th Cir. 2016).

In support of the Vocera records, Froedtert provided the declaration of its network engineer, who searched Froedtert's records related to its Vocera system for Lutz's activity. (*See* ECF No. 140.) Lutz does not substantively challenge the network engineer's declaration or the accuracy of the Vocera records. (*See generally* ECF No. 144; *see also Zayre Corp. v. S.M. & R. Co.*, 882 F.2d 1145, 1148–49 (7th Cir. 1989) (challenging alleged business records by questioning "the source of data for the printouts, the data's accuracy, the input procedures used to feed the data into the computer, or whether the computer was working properly").) A nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Waukesha Foundry, Inc. v. Indus. Eng'g, Inc.*, 91 F.3d 1002, 1007 (7th Cir. 1996). Lutz has not meaningfully challenged the authenticity of the records, which would be admissible by way of the engineer's testimony.

Lutz also argues that the Vocera records do not tell the whole story because she received work calls and texts via her personal cellphone. (ECF No. 145, ¶ 58.) Froedtert argues that Lutz cannot rely on her personal cellphone communications because she only alleged that interruptions occurred via her Vocera device in the operative (second

amended) complaint. (ECF No. 151 at 15.) Moreover, Lutz produced no responsive evidence when Froedtert requested all emails, text messages, or other ESI relating to Lutz's complaint. (*Id.*)

Froedtert is correct that the failure to provide responsive evidence precludes a plaintiff from relying on such evidence to oppose summary judgment. (*See* ECF No. 151 at 15 (citing Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."); *Moran v. Calumet City*, 54 F.4th 483, 497 (7th Cir. 2022) (holding that failure to provide responsive answers and documents during written discovery precludes a plaintiff from using that information to oppose summary judgment)).)

Because Lutz cannot rely on her alleged personal phone communications, Froedtert's records of Vocera activity undermine Lutz's claim that she received weekly work calls lasting at least five minutes during her meal periods.

### iii.    Vagueness

Froedtert argues that Lutz's allegations are too vague to adequately establish a claim. (ECF No. 142 at 28–30.) Froedtert suggests that Lutz has made speculative guesses about the frequency and duration by which Vocera calls interrupted her meals. (*Id.* at 29.)

"[A]lthough [courts] construe the record facts in the light most favorable to the nonmoving party, '[this] favor…does not extend to drawing inferences that are supported by only speculation or conjecture.'" *Osborn v. JAB Mgmt. Servs., Inc.*, 126 F.4th 1250, 1258 (7th Cir. 2025) (quoting *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008). Froedtert overstates the specificity required. (*See* ECF No. 142 at 29–30.) An employee is "under no obligation to rebuild her schedule with precision." *Osborn*, 126 F.4th at 1260.

In *Osborn*, the Seventh Circuit found that the employee failed to produce evidence that would provide "even a general sense of her typical workweek" and the evidence she provided suffered from inconsistencies. 126 F.4th at 1260. Although Froedtert has introduced evidence of inconsistency in Lutz's allegations, this case is a far-cry from the *Osborn* example where a remote employee vaguely alleged that she worked on "customer issues, the database, the reports…" for ten hours each day. *Id.* at 1259. Lutz paints with a narrower brush, estimating the frequency, duration, and subject matter of the work-related calls at issue. (ECF No. 144 at 24, 28–29.) Accordingly, Lutz's allegations are not so vague as to preclude her claim altogether.

### iv.    *De Minimis Time*

Finally, Froedtert argues that the amount of time Lutz spent answering Vocera calls during meal periods was so "insubstantial and insignificant" that the de minimis exception would not require compensation. (ECF No. 142 at 31.) "The de minimis

exception renders activities that take 'insubstantial and insignificant periods of time' not compensable under the FLSA." *Mazurek v. Metalcraft of Mayville, Inc.*, 110 F.4th 938, 945 (7th Cir. 2024) (citations omitted).

Froedtert does not address the aforementioned "predominant benefits" test. *See Barefield*, 81 F.3d at 710. However, the principle is similar to the concept of the de minimis rule. The predominant benefits test requires "sufficient development of the facts to enable a capable application of the appropriate predominant benefit standard, including a determination of whether the [employees] are unable to pass the mealtime comfortably because their time or attention is devoted primarily to official responsibilities." *Alexander*, 994 F.2d at 339.

While this question would typically be for the finder of fact, no genuine dispute of material fact exists because Lutz only alleges work interruptions via her Vocera (*see* ECF No. 130) and has not meaningfully challenged the Vocera records (*see* ECF No. 144), which reflect up to fourteen meal period phone calls over a period of eight months, each lasting less than one minute (*see* ECF No. 140-1). On this record, no reasonable factfinder could conclude that Lutz spent any meal periods with her time or attention devoted *primarily* to work responsibilities. *See Alexander*, 994 F.2d at 339. Because Lutz fails the predominant benefits test, the dispute of fact regarding Froedtert's knowledge of her work during meal periods is immaterial. Accordingly, Froedtert is entitled to judgment

as a matter of law, under federal law, as to Lutz's claim for mealtime compensation due to work interruptions.

However, Froedtert has introduced no evidence that Wisconsin also applies the "predominant benefits" test. (*See* ECF No. 142.) Nor does Froedtert acknowledge the Wisconsin Supreme Court's observation that "no Wisconsin cases, statutes, or regulations state that the de minimis doctrine applies to Wisconsin DWD regulations or in employment disputes." *United Food*, 876 N.W.2d at 114.

"[I]t is not this court's responsibility to research and construct the parties' arguments." *Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011) (citation omitted). Therefore, a genuine dispute of material fact remains as to whether the work calls interrupted Lutz's meal periods significantly enough to warrant compensation under Wisconsin law. *See* Wis. Adm. Code § DWD 274.02(3) ("An on-duty meal period is a meal period where the employer does not provide at least 30 minutes free from work."). The court will deny Froedtert's motion for summary judgment under Wisconsin law.

## CONCLUSION

In sum, Froedtert has established that it is entitled to judgment as a matter of federal and state law with respect to Lutz's class-wide claims related to overtime compensation. Because Froedtert concedes liability for Lutz's individual claim related to on-call pay during overtime weeks, judgment as a matter of law for Lutz is appropriate, subject to Lutz establishing she suffered damages during the relevant period. As for

Lutz's individual claims related to meal period compensation, Froedtert is entitled to judgment as a matter of federal, but not state, law with respect to Lutz's claim based on interruptions during meal periods. Genuine disputes of material fact preclude Froedtert's motion for summary judgment on Lutz's state law claim for compensation based on inability to leave during meal periods.

**IT IS THEREFORE ORDERED** that the plaintiff's motion for partial summary judgment (ECF No. 132) is **granted in part and denied in part** as set forth in this decision.

**IT IS FURTHER ORDERED** that the defendant's cross-motion for partial summary judgment (ECF No. 136) is **granted in part and denied in part** as set forth in this decision.

The Clerk shall schedule a status conference to discuss how the case will proceed.

Dated at Milwaukee, Wisconsin this 22nd day of July, 2025.

WILLIAM E. DUFFIN
U.S. Magistrate Judge