# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**NICHOLE LUTZ,**
*on behalf of herself and all others similarly situated*,

**Plaintiff,**

v.  Case No. 23-CV-974

**FROEDTERT HEALTH INC.,**

**Defendant.**

# DECISION AND ORDER
# ON PLAINTIFF'S MOTION FOR RECONSIDERATION

## 1. Introduction

On July 22, 2025, the court issued a decision and order (ECF No. 155) resolving the parties' cross motions for summary judgment (ECF Nos. 132, 136). On August 5, 2025, plaintiff Nichole Lutz moved the court to reconsider its decision as to all adverse findings. (ECF No. 136.) The motion is fully briefed and ready for resolution.

## 2. Background

The facts underlying the dispute between the parties are outlined in detail in the court's July 22, 2025, decision. *See Lutz v. Froedtert Health Inc.*, No. 23-CV-974, 2025 WL 2049206, 2025 U.S. Dist. LEXIS 139458 (E.D. Wis. July 22, 2025). In sum, Lutz alleged

violations of the Fair Labor Standards Act (FLSA) and Wisconsin's Wage Payment and Collection Laws. (2d Am. Compl., ECF No. 130.) The court determined that defendant Froedtert Health, Inc. was entitled to judgment as a matter of federal and state law with respect to Lutz's two class-wide claims related to overtime compensation. The court also made one ruling adverse to Lutz on her individual claims, concluding that Froedtert was entitled to judgment as a matter of federal, but not state, law with respect to Lutz's compensation claim based on interruptions during meal periods.

3. **Legal Standard**

A district court may revise any order or decision at any time before the entry of final judgment. Fed. R. Civ. P. 54(b); s*ee also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) ("every order short of a final decree is subject to reopening at the discretion of the district judge").

Having said that, a "[c]ourt's opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 932 (7th Cir. 2018) (quoting *Quaker Alloy Casting Co. v. Gulfco Industries, Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988)). "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) (quoting *Keene Corp. v. Int'l Fidelity Ins. Co.*, 561 F. Supp. 656, 665 (N.D. Ill. 1982)). They are not the forum for rehashing rejected arguments or raising arguments that could have been raised

2

earlier. *See Caisse Nationale de Credit Agricole*, 90 F.3d at 1269; *Bloch v. Frischholz*, 587 F.3d 771, 784 n.9 (7th Cir. 2009) (citing *Brooks v. City of Chi.*, 564 F.3d 830, 833 (7th Cir. 2009)).

Courts, however, are not above making mistakes. While the normal process for correcting the errors of a district court is an appeal, a motion for reconsideration "enables the court to correct its own errors and thus avoid unnecessary appellate procedures." *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012) (discussing Rule 59(e); quoting *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996)).

4. **Analysis**

Froedtert contends that each of Lutz's challenges merely repeats arguments she made during briefing on the parties' motions for summary judgment. (ECF No. 160.)

With respect to the two class wide claims, Lutz's motion for reconsideration simply takes issue with the way the court decided the motion for summary judgment. She claims that the court failed to follow controlling precedent, which she interprets differently than the court did. But that is not an appropriate basis for reconsideration. *See Oto v. Metropolitan Life Ins. Co.*, 244 F.3d 601, 606 (7th Cir. 2000) (holding that a motion that "merely took umbrage with the court's ruling and rehashed arguments" was properly rejected by the district court). In the interest of clarity, however, the court will address each claim in turn.

**4.1(a) Subclass One: Overtime Computation under Federal Law**

Lutz's first class claim alleged that Froedtert improperly totaled weekly compensation when overtime was involved. (ECF No. 143 at 9.) Lutz argues that the court ignored controlling precedent by ruling that there are two different types of "credit." (ECF No. 157 at 3.) To be clear, the court never concluded that there are two different types of "credit"—only that Lutz applied the word differently than the FLSA. (ECF No. 155 at 11–12.)

The FLSA mandates that employers pay employees an overtime rate of one and one-half times their regular rate of pay for all hours worked in excess of forty hours in a workweek. 29 U.S.C. § 207(a)(1). The FLSA defines the "regular rate" as "all remuneration for employment paid to, or on behalf of, the employee," subject to certain enumerated exemptions outlined in 29 U.S.C. § 207(e). Under § 207(h) of the FLSA, wages excluded from calculation of the regular rate are "creditable" toward wages owed for statutory overtime if they are the type of compensation described in paragraphs (5), (6), and (7) of § 207(e).

For purposes of the first subclass, Lutz's claim has nothing to do with any sums excluded from calculation of the regular rate pursuant to § 207(e). The parties agree that Froedtert should not, and did not, exclude any of the extra pay in question (such as shift and weekend differentials and compensation for undesirable shifts) from its calculation of the regular rate under § 207(e). (*See* ECF Nos. 143 at 5; 148 at 8.)

The essence of Lutz's claim is that the extra pay should be excluded from the one and one-half times calculation of overtime compensation because failure to do so is equivalent to a § 207(h)(2) "credit" toward overtime compensation owed under the statute. (ECF No. 157 at 4–14.) It is not. To include the extra pay in question in the regular rate calculation and then exclude that extra pay from the one and one-half times calculation of overtime compensation would constitute a form of pyramiding made impermissible by the very precedent Lutz claims to be enforcing. (*See id.* at 9 (citing *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 464 (1948)).)

Lutz asserts that Froedtert does not pay employees the equivalent of the regular rate for their base compensation before overtime pay, but that is only true in Lutz's version of the numbers because she drives the regular rate up by (correctly) including the extra pay in the calculation of the regular rate and then (incorrectly) removes that extra compensation from the calculation of total pay. No statutory or controlling precedent supports this position.

Lutz also paints a misleading picture by dissecting the compensation at hourly and daily levels when the FLSA's section on overtime compensation is concerned with weekly statistics. *See* 29. U.S.C. § 207. The court understands that Lutz and other similarly situated employees may feel frustrated if extra pay appears diluted by overtime compensation. To illustrate, an employee could hypothetically earn a base rate of $20 per hour but earn $28 per hour (due to a differential or extra pay program) during a final

5

eight-hour shift of a fifty-hour work week (when she feels like she is truly working the overtime hours). That employee might hope to earn $42 per hour for that shift (one and one-half times the rate she earned during the last shift). And her employer is entitled to pay her in this method if the parties negotiate as much. But the FLSA only prescribes a floor, and it requires that such an employee earn overtime at one and one-half times the regular rate that she earned for that entire week, which may or may not be a different figure because it is based on the average for the week.

Lutz argues that "[c]ompensation that must be included in the regular rate is not creditable towards overtime pay owed to the employee." (ECF No. 157 at 8 (citations omitted).) The court agrees and concludes again that Lutz has not demonstrated any such crediting occurred here. Therefore, Lutz's motion will be denied with respect to the first class claim under federal law.

**4.1(b) Subclass One: Overtime Computation under State Law**

Lutz also requests that the court reconsider her first class claim under Wisconsin wage and hour law. (ECF No. 157 at 14–16.) She contends that the court failed to give effect to meaningful differences between the FLSA and Wisconsin law. (*Id.*)

Lutz acknowledges that Wisconsin law adopts the FLSA's concept of the regular rate and argues that the lack of a state law section equivalent to § 207(h)(2) means that no crediting is permitted under state law. (ECF No. 157 at 14–16.) As previously explained,

Lutz did not establish that any inappropriate crediting occurred. Therefore, the lack of state law parallel to § 207(h)(2) is immaterial.

Because Lutz has not demonstrated a manifest error of law, the court will deny her motion to reconsider as to her first class claim under state law.

**4.2(a) Subclass Two: Holiday & Overtime Hours under Federal Law**

Lutz's second class claim alleged that Froedtert miscalculated overtime compensation during weeks when employees worked on one or more holidays. (ECF No. 143 at 16.) Lutz argues that the court erroneously granted summary judgment to Froedtert on this claim because it misinterpreted 29 C.F.R. § 778.203. (ECF No. 157 at 16–21.)

As previously mentioned, the regular rate that is calculated for overtime purposes must include all remuneration for employment, subject to certain enumerated exceptions. *See* 29 U.S.C. § 207(e). Holiday premium pay is one of those exceptions, but only if the premium rate is "not less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days." 29 U.S.C. § 207(e)(6). Lutz's class claim is that Froedtert excluded from its calculation of the regular rate holiday premium pay even when the holiday premium did not meet the one and one-half times qualification. (ECF No. 157 at 21.) Lutz draws this conclusion because the parties dispute how to determine "the rate established in good faith for like work performed in nonovertime hours on other days"—in other words, the rate that

determines whether a holiday premium meets the one and one-half times threshold under § 207(e)(6).

The regulation by the Department of Labor that Lutz challenges on reconsideration—29 C.F.R. § 778.203(a)—provides interpretative guidance for determining that disputed rate under § 207(e)(6) by distinguishing between employees who were hired at a single hourly rate of pay and those who are pieceworkers or who work more than one job for which different hourly or piece rates have been established.

Lutz argues that she and other similarly situated employees qualify for the first category (employees who were hired at a single hourly rate of pay) because they have a single base rate on top of which they may receive shift and weekend differentials or other extra compensation but do not work more than one job. (ECF No. 157 at 21.) The court concluded that Lutz and her coworkers logically must be treated like the second category of employees because they receive different rates of pay for different shifts, even if they are not performing distinct jobs. (ECF No. 155 at 14–17.)

There are two problems with Lutz's argument. First, it runs contrary to the logical reading of the regulation. *See, e.g.*, *United States v. Johnson*, 875 F.3d 360, 369 (7th Cir. 2017) (citing the "more logical reading of the statute" as a reason for its interpretation). Section 778.203(a) directs that holiday premium pay for "first category" employees will qualify for the § 207(e)(6) exception if it is at least one and one-half times the employee's "regular

hourly rate." "Regular hourly rate" is not defined because no definition is needed for employees who work on the basis of a single hourly rate.

The court cannot reasonably read "regular hourly rate" to mean the "regular rate" as defined at § 207(e) because, as the court already explained, it would not make sense for an employer to calculate the regular rate by including the holiday premium pay in order to determine whether the holiday premium pay should be excluded from calculation of the regular rate. (ECF No. 155 at 15–16.) Moreover, to do so would create a pyramiding effect that would unfairly benefit employees who earn single rates of pay over those who work different jobs during the week. *See* 29 C.F.R. § 778.203(a) (directing that holiday pay for "second category" employees will qualify for the § 207(e)(6) exception if the premium rate is one and one-half times the rate applicable to the job performed on the holiday, which would not incorporate any boost from the holiday.)

Second, the court's decision is consistent with the Seventh Circuit's reasoning in *Reich v. Interstate Brands Corp.*, 57 F.3d 574 (7th Cir. 1995). Lutz argues that *Reich* compels the conclusion that employees who receive a premium for performing the same job during holiday hours fall within the first category recognized by § 778.203(a). (ECF No. 157 at 21.) But *Reich* imposes no such requirement. *Reich* involved annual lump sum compensation for working an unfavorable schedule that the employer argued should be classified under the § 207(e)(2) exception to the regular rate. But the Seventh Circuit concluded that the compensation should be handled under § 207(e)(7). *See* 57 F.3d at 577–

9
Case 2:23-cv-00974-WED    Filed 10/02/25    Page 9 of 18    Document 162

79. The case never addressed the regulation in question—§ 778.203(a). In its analysis of the available exceptions to the regular rate calculation, the Court provided an example under § 207(e)(6) whereby a hypothetical employee's regular weekday rate was $10 and the rate for Sunday work was $15, so the Sunday premium would not be figured in the regular rate as a § 207(e)(6) exception but would be included if it were only $14. *See Reich*, 57 F.3d at 578.

Contrary to Lutz's interpretation, the Seventh Circuit's hypothetical example in *Reich* supports the court's conclusion that Froedtert has not improperly excluded holiday compensation from the regular rate under the § 207(e)(6) exception. The *Reich* example is consistent with classifying the hypothetical employee in the second category under § 778.203(a) whereby the premium rate needed to be one and one-half times the bona fide rate that she would typically earn on the special day had it not been a weekend or holiday. *Compare Reich*, 57 F.3d at 578, *with* 29 C.F.R. § 778.203(a). The hypothetical could also be consistent with first-category classification if the Seventh Circuit meant to interpret the first category based on the rate without any extra pay factored into the calculation. In either event, the hypothetical does not support Lutz's interpretation, under which the $15 Sunday rate would have raised the employee's regular rate to a figure over $10, thereby requiring a rate over $15 to be one and one-half times the regular rate and qualify for the § 207(e)(6) exception.

10

Case 2:23-cv-00974-WED    Filed 10/02/25    Page 10 of 18    Document 162

Given the logical interpretation and consistency with controlling precedent, the court will deny Lutz's motion to reconsider with respect to her second class claim for holiday overtime compensation under federal law.

**4.2(b) Subclass Two: Holiday & Overtime Hours under State Law**

Lutz also requests that the court reconsider her second class claim under Wisconsin wage and hour law. (ECF No. 157 at 21–24.) Like the first state law claim, she contends that the court failed to give effect to meaningful differences between the FLSA and Wisconsin law. (*Id.*)

Lutz acknowledges that Wisconsin law does not define the "regular rate" but has adopted the FLSA's concept thereof. (ECF No. 157 at 23.) She argues that the adoption has limits because Wisconsin law does not include a provision equivalent to § 207(e)(6) and, therefore, Wisconsin law must require employers to include holiday premiums when computing the regular rate. (*Id.* at 21–23.) She contends that Wisconsin lawmakers intended for *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446 (1948), and *Pabst Brewing Co. v. WERC*, 31 N.W.2d 515 (Wis. 1948), to govern based on the law as it stood before Congress enacted § 207(e)(6). (*Id.* at 23–24.)

Lutz also relies on a "Frequently Asked Questions" publication from the Wisconsin Department of Workforce Development, which states that the regular rate "includes all remuneration paid to or on behalf of the employee such as commissions, nondiscretionary bonus [sic], premium pay, and piecework incentives." *See* "Hours of

Work and Overtime Frequently Asked Questions," *Wis. Dep't of Workforce Dev.*, available at https://dwd.wisconsin.gov/er/laborstandards/overtimefaq.htm. Lutz argues that the court erred by failing to give deference to this publication and interpreting its reference to premium pay to include all holiday premium pay. (ECF No. 157 at 22–23.) She notes that "Wisconsin law gives 'due weight' to the experience, technical competence, and specialized knowledge of its administrative agencies, such as the Department of Workforce Development." *Dokey v. Spancrete, Inc.*, No. 19-CV-921-JPS-JPS, 2021 WL 535435, at *1 n.2, 2021 U.S. Dist. LEXIS 27715, at *2 n.2 (E.D. Wis. Feb. 12, 2021) (internal quotations omitted) (quoting *Tetra Tech EC, Inc. v. Wis. Dep't of Rev.*, 914 N.W.2d 21, 28–29 (Wis. 2018)).)

But affording "due weight" does not mean deferring to an ambiguous administrative publication that has not resulted from "an exercise in notice-and-comment rulemaking nor the outcome of administrative adjudication." *See Van Straaten v. Shell Oil Prods. Co. LLC*, 678 F.3d 486, 488 (7th Cir. 2012). After all, the FLSA includes holiday premium pay in the regular rate as well, unless it reaches the one and one-half times threshold. *See* 29 U.S.C. § 207(e)(6). As the defendants point out, neither Wisconsin law nor this agency publication explicitly excludes other compensation (such as for vacation or sick time) from the regular rate, but Lutz does not argue that the corresponding provision of the FLSA—§ 207(e)(2)—should be treated in the same manner as she

advocates for § 207(e)(6). (ECF No. 160 at 19.) Accordingly, the court maintains its position on the state law interpretation. (*See* ECF No. 155 at 17–21.)

Because Lutz has not demonstrated a manifest error of law, the court will deny her motion to reconsider as to her second class claim for holiday overtime compensation under state law.

**4.3 Individual Claim: Interruptions during Meal Periods**

Lutz moves the court to reconsider its adverse ruling on her individual federal claim for compensation when Froedtert allegedly interrupted her meal periods with work responsibilities. (ECF No. 157 at 24–29.) The court allowed Lutz's claim to survive summary judgment under state law because Froedtert did not introduce any evidence that Wisconsin applies the "predominant benefits" test employed by the Seventh Circuit for determining whether meal periods are work periods. (ECF No. 155 at 26–34; *see also Alexander v. City of Chi.*, 994 F.2d 333, 337 (7th Cir. 1993) (adopting the predominant benefits test).)

On reconsideration, Lutz argues that the court misapplied the predominant benefits test to her federal claim because it misunderstood the amount of time Lutz alleged she worked during meal periods and improperly applied a discovery sanction to limit the manner in which Lutz could establish she worked during meal periods. (ECF No. 157 at 24–29.) She also claims that the interruptions shortened her meal periods to less than twenty consecutive minutes, which made them rest periods under 29 C.F.R.

§ 785.18 rather than bona fide meal periods under 29 C.F.R. § 785.19. (ECF No. 157 at 25–26.)

**4.3(a) Bona Fide Meal Period**

Lutz cites out-of-circuit caselaw for her proposition that a period of less than twenty consecutive minutes is per se not considered a bona fide meal period. (ECF No. 157 at 25 (citing *Sec'y United States Dep't of Lab. v. Am. Future Sys., Inc.*, 873 F.3d 420, 423 (3d Cir. 2017); *Acosta v. Granitech, Inc.*, No. 1:17-cv-400, 2018 WL 11239319, at *8, 2018 U.S. Dist. LEXIS 241570, at *16–17 (E.D. VA. July 16, 2018).) But caselaw from this circuit clearly establishes that, rather than a flat twenty minutes or less test, "[t]he Seventh Circuit uses the predominant-benefits test to decide whether meal periods constitute work periods." *Manuele v. City of Springfield, Ill.*, 718 F. Supp. 2d 939, 948 (C.D. Ill. 2010) (citing *Barefield v. Vill. of Winnetka*, 81 F.3d 704, 710 (7th Cir. 1996)). Therefore, the court rejects this argument.

**4.3(b) Scope of Work**

Lutz is correct that the court misunderstood her claim to involve only interruptions via phone, when in fact Lutz alleged in her declaration that she would sometimes return to her worksite if she received a question she could not answer by phone during a meal period. (*See* Lutz Dec., ECF No. 147, ¶ 13.) Froedtert does not directly respond to this allegation on reconsideration. (*See* ECF No. 160 at 19–24.)

In her declaration Lutz stated that in some instances after locating the instruments or paperwork relative to whatever question she was called about she would turn to other work. (*See* Lutz Dec., ECF No. 147, ¶ 13.) She went on to state that, in some instances, when she started working immediately after returning from her break, the lead person from her department would speak to her about extending her meal periods. (*Id.*, ¶ 14.) Accordingly, the declaration vaguely suggests that Lutz's shortened meal period may have been accommodated by an additional meal period that day.

Froedtert summarily claimed that Lutz did not establish she was required to return to work during her meal periods or that her return to work was anything more than to help coworkers. (ECF No. 152 at 41, ¶ 13.) Even though "the FLSA stops short of requiring the employer to pay for work it did not know about, and had no reason to know about," *Kellar v. Summit Seating, Inc.*, 664 F.3d 169, 177 (7th Cir. 2011), Froedtert's response suggests that it had reason to know about Lutz's alleged work during her meal periods.

Although Lutz did not provide an estimate of how often she returned to work early during meal periods, the court did not account for this possibility when it concluded that the length and duration of the Vocera calls would not permit a reasonable factfinder to conclude that Lutz spent any meal periods with her time or attention devoted *primarily* to work responsibilities. (ECF No. 155 at 33.) The court concludes that Lutz's allegation is not so vague as to preclude a genuine dispute of material fact, which cannot be resolved at the summary judgment stage. *See Manuele*, 718 F. Supp. 2d at 948 ("In most instances,

determining whether a meal period was spent predominately for the employer's benefit entails resolving factual disputes.").

Therefore, the court will grant Lutz's motion and amend its prior order (ECF No. 155) to deny Froedtert's motion for summary judgment with respect to this individual claim under federal law.

**4.3(c) Discovery Sanction**

Lutz alleges that the court limited the manner in which she could establish that she worked during meal periods by imposing an improper discovery sanction. (ECF No. 157 at 27–29.)

Lutz argued in her summary judgment materials that the Vocera records did not tell the whole story because she received work calls and texts via her personal cellphone. (ECF No. 145, ¶ 58.) But Lutz produced no responsive evidence when Froedtert requested all emails, text messages, or other ESI relating to her complaint. (ECF No. 151 at 15.) The court observed that the failure to provide responsive evidence precludes a plaintiff from relying on such evidence to oppose summary judgment. (*See* ECF No. 155 at 31 (citing Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."); *Moran v. Calumet City*, 54 F.4th 483, 497 (7th Cir. 2022) (holding that the failure to provide responsive answers and documents during

16
Case 2:23-cv-00974-WED   Filed 10/02/25   Page 16 of 18   Document 162

written discovery precludes a plaintiff from using that information to oppose summary judgment)).) Therefore, the court concluded that Lutz could not rely on her alleged personal phone communications. (ECF No. 155 at 31.)

On reconsideration, Lutz contends that the court effectively imposed a sanction under Rule 37(b)(2)(A)(ii) without giving her an opportunity to be heard. (ECF No. 157 at 28.) Lutz alleges that the court can only bar her from introducing the text messages into evidence but not from offering declaration testimony that her meal periods were interrupted when lead persons contacted her on her personal phone during meal periods. (*Id.* at 28–29.) Lutz also explains that she did not provide the text messages because she could no longer access them. (*Id.* at 29.)

It was correct to preclude Lutz from relying on any personal phone records that she might produce after failing to do so during discovery. (ECF No. 155 at 31.) However, the court misstated the consequence of that decision. Lutz may rely on her declaration testimony to support her position that Froedtert employees called her with work questions during meal periods. (*See* ECF No. 147, ¶¶ 11–12.) Although Froedtert disputes the admissibility of the phone records (and any records explaining the inability to access them), it does not challenge Lutz's declaration testimony about those communications. (*See* ECF No. 160 at 22–24.) The court cannot make a credibility finding about the veracity of Lutz's testimony at the summary judgment stage. *See Reinebold v. Bruce*, 18 F.4th 922, 927 (7th Cir. 2021) (observing that the court "may not make credibility determinations,

weigh the evidence, or decide which inferences to draw from the facts" when ruling on a motion for summary judgment).

Therefore, Lutz's declaration testimony about her personal phone communications further supports the court's decision to grant her motion for reconsideration and amend its prior order (ECF No. 155) to deny Froedtert's motion for summary judgment with respect to this individual claim under federal law.

## CONCLUSION

**IT IS THEREFORE ORDERED** that the plaintiff's motion for reconsideration (ECF No. 156) is **granted in part and denied in part** as set forth in this decision. The court's prior order on the parties' cross motions for summary judgment (ECF No. 155) is hereby **amended** to deny Froedtert's motion for summary judgment with respect to Lutz's individual claim for meal period compensation under federal law. Lutz's motion to reconsider is denied in all other respects.

The Clerk shall schedule a status conference to discuss how the case will proceed.

Dated at Milwaukee, Wisconsin this 2nd day of October, 2025.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge